No. 3526

Second Circuit

———

WOODLEY & COLLINS v. SCHUSTER'S WHOLESALE GROCERY CO., INC.

———

(November 18, 1929. Opinion and Decree.)
(December 31, 1929. Rehearing Refused.)
(March 31, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

———

Albert P. Garland, of Shreveport, attorney for plaintiffs, appellants.

Barnette & Roberts, of Shreveport, attorneys for defendant, appellee.

REYNOLDS, J. An automobile owned by plaintiffs and driven by their employee, and traveling eastward on the Shreveport-Minden highway, ran into the rear of a trailer attached to a motortruck owned by defendant and in charge of its employee and stopped on the right hand side of the road in the direction that it had been moving. Plaintiffs' car was rendered worthless by the collision, and they here sue defendant for $1,518, as the value of the automobile, with legal interest on the amount from the date of the accident, and for $8 a day from that date until the value of the car with interest thereon as aforesaid be paid. They allege that the collision was the result of defendant's negligence, in that no tail light or other warning of the presence of the truck and attached trailer was attached to either and that this omission was in violation of the laws of the state of Louisiana and of an ordinance of the police jury of Bossier parish.

The accident occurred at about 9 o'clock at night on May 15, 1928, about five miles east of the city of Shreveport.

The defendant denied the negligence alleged and averred that the truck and trailer were temporarily stopped on the extreme right-hand side of the road in the direction in which it had been moving to permit its servant to do some minor work on the motor of the truck, requiring only a few minutes time, and that while they were halted there the rear end of the trailer was run into by plaintiffs' automobile; that plaintiffs' automobile was moving at a dangerous, excessive, reckless, negligent, and unlawful speed; that the driver of it was not exercising any care or caution or keeping a proper lookout of condition of the road ahead of him; that he saw or should have seen the truck and trailer and could and should have avoided running into the trailer; that as plaintiffs' automobile approached defendants' truck and trailer another automobile, showing brilliant headlights, was close by approaching from the opposite direction; that if the driver of plaintiffs' car did not or could not see the trailer, it was either because he was not keeping a lookout ahead or was temporarily blinded by these headlights; that if he was unable

to see the trailer because of being so blinded, it was his duty to stop his car or at least reduce its speed until he was no longer blinded; that he neither stopped his car nor reduced its speed; and that the speed of plaintiffs' car, the failure of its driver to observe the road ahead of it, and his failure to either stop or reduce the speed of his car when blinded by the headlights of the automobile approaching from the opposite direction, was negligence, and the sole cause of the collision.

And defendant further averred that its truck and trailer had been damaged to the extent of $57.15 in the collision, and it prayed judgment in reconvention against plaintiffs for this amount.

On these issues the case was tried, and there was judgment rejecting plaintiffs' demands and dismissing their suit and also rejecting defendant's demands in reconvention.

The plaintiffs appealed. The defendant did not appeal or answer the plaintiffs' appeal.

## OPINION

At the point where the collision occurred the road is straight for nearly half a mile and wide enough to permit plaintiffs' automobile easily to have passed defendant's truck and trailer on their left-hand side.

J. V. Chandler, the driver of plaintiffs' car, testified that there was no tail-light or other light on defendant's trailer or truck, and that had there been he would have seen it in time to have avoided running into the trailer; that he was an experienced driver; and that the headlights of his automobile were showing properly.

"Q. About how fast were you traveling, Mr. Chandler, at the time you ran into this truck?

"A. I imagine between twenty and thirty miles an hour.

\*    \*    \*

"Q. Mr. Chandler, I hand you document marked D-1, D-2 and D-3, and ask you to examine those and state whether or not it is the statement you gave of this accident?

"A. Yes, sir.

"Q. All right. It is also signed over here by Mr. J. E. Woodley, on each of the three pages; he witnessed your signature?

"A. Yes.

"Q. And it is also signed by Mr. P. Nagele, Jr. They witnessed your signature when you signed?

"A. Yes, sir.

"Q. I notice you say here: 'That suddenly I saw a car coming towards me going west; it had its bright lights on and these blinded me. I did not apply my brakes when I was blinded. Just as this car passed me I saw in front of me a big truck. I immediately applied my brakes and cut my wheels to the left'; that is a fact, Mr. Chandler?

"A. No, sir; he wrote that to suit himself. I argued with him at the time he wrote it down. I didn't want to sign it. He came out the next morning after I was hurt. I told him I had rather not make a statement. He wrote it himself. When he brought up that 'suddenly a car appeared with bright lights' I argued with him on that. It didn't suddenly appear. I saw that car away down the road. And he said 'well, all right; we are going to fix it up all right; just go ahead and sign it.'

"Q. You did see this car with bright lights?

"A. Yes, every one of them; all had bright lights; it was no brighter than the rest.

"Q. This one that blinded you just before you hit the truck?

"A. Just ordinary lights; ordinary lights coming down the road; all bright lights.

"Q. But didn't you meet this car just about the time, or just before you hit the truck?

"A. Yes; met the car about the time I hit the truck.

"Q. It had bright lights?

"A. Yes—but I saw the truck was there—

"Q. Those bright lights blinded you—you hit the truck?

"A. Did not blind me where I could not see at that particular moment.

\*   \*   \*

"Q. If you go straight down the road with your headlights burning and there is a man in front of you, can you not see him?

"A. No.

"Q. Cannot see him at all?

"A. Not when meeting .headlights.

"Q. If there are no headlights to interfere you can see?

"A. Yes.

"Q. If there were no headlights to interfere with your vision at this time, could you have seen the truck?

"A. No.

"Q. Why?

"A. He didn't have a tail light on the truck.

\*   \*   \*

"Q. If the truck had been parked along the road, no other lights, could you have seen it?

"A. Yes."

On cross-examination the witness testified:

"Q. Did you make that statement?

"A. Not in those words; no, sir.

"Q. Did you use those words in substance?

"A. Well, at the time that he came out there to get that signed up, was the next morning after I was hurt, and really I was in no shape or condition to discuss anything.

"Q. I don't care about that—did you say it or not?

"A. I didn't say it all at once like that—I argued with him before signing that; when he said 'suddenly the bright lights appeared in front of me'. that was not right. I could see the lights all the way from the curve. He said it didn't make any difference—just a little information he wanted to send into the office and get a settlement and fix it up with Mr. Woodley for his car.

"Q. The rest is all right?

"A. Well, yes, I guess it is."

M. S. Wilson testified that he was driving the car with the bright headlights that approached from the east, and that at the time of the collision he was about 20 feet in front of defendant's truck; that he witnessed the collision; and that he got out of his car on the spot and had a conversation about the accident with Mr. Chandler.

"Q. What did he say at that time?

"A. I first asked him whether or not he was hurt, and he said not seriously that he could tell.

"Q. Then what did he say?

"A. He remarked about my lights blinding him.

"Q. What remark did he make?

"A. Said my lights blinded him. All the words that passed."

Joe Walberg testified that he was driving defendant's truck, and at the time of the collision had been stopped about ten minutes on the extreme right-hand side of the road and would have resumed his journey in four or five minutes longer; that the trailer had a tail-light and that the light was burning.

Harry Johns testified that he was a fellow employee of Walberg's and was with him on the journey. He corroborated Walberg's testimony that the truck and trailer were on the extreme right-hand side of the road and that there was a light on the rear end of the trailer.

The evidence as to whether there was a light on the rear end of the trailer is conflicting, but if there was none that fact is not important, because we are of the opinion that the proximate cause of the accident was the failure of the driver of plaintiffs' car to stop the car or reduce its

speed when he became blinded by the headlights of the automobile approaching from the opposite direction.

The case of Pepper vs. Walsworth, 6 La. App. 610, was in some respects similar to the one at bar. There plaintiff's car was run into in the rear by defendant's car going in the same direction. Plaintiff's car was on the extreme right-hand side of the road. The collision took place at night and plaintiff's car had no tail-light.

And this court said:

"The driver of an automobile has no right to assume that the road before him is open, and to proceed ahead without regard to the safety of those who may be therein. To proceed ahead when one is utterly blinded, as the driver of this car says he was, at a speed of twenty-five miles an hour, is the grossest kind of negligence. When a driver finds that he is unable to see the road ahead of him, for any reason whatever, whether blinded by bright lights, smoke, dust, fog or for any other reason, it is his duty to at least bring his car under such control that it can be stopped in a moment in case of emergency, and in extreme cases it is, his duty to stop. * * *

"The rule that a person driving an automobile at night, who finds himself blinded by the lights of an approaching car must slacken his speed and have his car under such control that he could stop it immediately if necessary to avoid striking those rightfully in the road ahead of him, is sanctioned by the courts of last resort in every state of the Union where the question has been raised."

See also Ward vs. Donahue, 8 La. App. 335; King vs. Emmons, 10 La. App. 204, 120 So. 648; Southall vs. Smith, 151 La. 967, 92 So. 402, 27 A. L. R. 1194.

While it is true that the failure to comply with the provisions of a statute regulating the use of motor vehicles on the highways is negligence, it is equally true that where such negligence alone is pleaded as creating a liability it must be shown that the negligence arising from the violation of the law was the proximate cause of the accident; and we are of the opinion that, considering the circumstances prevailing immediately before the collision, not the absence of a tail-light from defendant's trailer, but the failure to stop or reduce the speed of plaintiffs' car, was the proximate cause of the accident.

As to defendant's reconventional demand, inasmuch as it neither appealed nor answered plaintiffs' appeal, that is not before us.

Under the law and the evidence the judgment appealed from is correct, and it is affirmed.