PENTON v. FISHER et al. *
No. 1308.

Court of Appeal of Louisiana.
First Circuit.
May 8, 1934.

*Rehearing denied June 11, 1934.

St. Clair Adams and St. Clair Adams, Jr., both of New Orleans, for appellants.

H. H. Richardson, of Bogalusa, for appellee.

ELLIOTT, Judge.

Three suits, the one above mentioned and that of Andrew Entrevia v. Max Fisher et al., 155 So. 41, and Jim Nettles v. Max Fisher et al., 155 So. 41, are based on the same cause of action and governed by the same law and facts. They were consolidated for the purposes of trial in the lower court and tried together, a separate judgment being rendered in each case.

The cases are all covered in the same brief and have been submitted to us as consolidated cases. We will deal with them on appeal accordingly. Our opinion in the Penton case will therefore serve for the disposition of the other two cases.

Max Fisher and Mrs. Pauline Fisher, his wife, left their home in Bogalusa during the early morning of October 24, 1932, traveling in an automobile, intending to go to Tylertown by way of Franklinton. Their road from Bogalusa to Franklinton led westward. They had not gone more than 4 or 5 miles when their automobile was struck in the rear by a truck belonging to Murphy J. Clayton while being driven westward on the highway by his employee, Wade De Laune, just after it had passed over the crest of a hill and had started down the other side. It was not stopped by the blow, but continued on down to the foot of the hill, a distance, which, due to discrepancies in the testimony of the witnesses concerning the distance, we estimate at between 75 and 125 feet, where it stopped in an angling position on the wrong side of the road in the direction in which it was going.

As soon as it stopped, Fisher got out and assisted his wife out. He also tried to push the automobile back to the right side of the road, but could not move it. He then turned around to look for Bernstein, who, it seems, had been knocked out of the automobile as a result of the impact, and at that instant while Fisher and his wife were standing near their automobile, approximately stated about one minute after it had been struck in the rear, it was suddenly struck in front by another truck going eastward on the highway, belonging to Andrew Entrevia and while being driven by his employee, Grant Penton. The Entrevia truck was badly damaged, and Penton and Jim Nettles, another Entrevia employee riding on the truck, were, as a result of the collision, badly injured.

Andrew Entrevia, alleging injury to his truck, and Penton and Nettles, alleging injury to themselves, each brought suit against Fisher and his insurer, Guardian Casualty Insurance Company of Buffalo, N. Y., and against Murphy J. Clayton and his insurer, Massachusetts Bonding and Insurance Company of Boston, Mass. Entrevia claims $217.80 as damages done to his truck and $280 on account of the loss of its use, a total of $497.80. Jim Nettles claims $2,048 on account of personal injuries and for hospital, drug store, and medical bills. Grant Penton claims $1,533 on account of personal injuries, hospital and drug store bills. Judgment is prayed for in each case against the defendants in solido.

After the suit was filed, the plaintiffs and Max Fisher and Guardian Casualty Company entered into a compromise agreement whereby the three suits as between them were compromised and dismissed without prejudice to plaintiffs' right to continue their suits against Clayton and Massachusetts Bonding & Insurance Co.

Defendants Clayton and Massachusetts Bonding and Insurance Company excepted to plaintiffs' petition in each case. Each of the plaintiffs filed amendments to their petition. The exceptions were ultimately overruled. Defendants then filed an answer in each case in which they deny the fault and negligence alleged against the driver of the Clayton truck, and placed the entire blame on Fisher; but in the alternative, and in the event it was found that defendants were in any way negligent and at fault, they allege

that plaintiffs' contributory negligence and fault were responsible for the collision in which Entrevia's truck was damaged and Nettles and Penton injured.

The trial resulted in a judgment in favor of Entrevia for. $217.80, in favor of Nettles for $1,030, and in favor of Penton for $520, and, as it was shown on the trial that Entrevia had been paid $217.80, Nettles $290.10, and Penton $290.10 in the compromise agreement heretofore mentioned, it was ordered that the judgments in their favor be credited with the sums received. The credit left nothing due Entrevia except the costs of court.

The defendants have appealed. We have not entered into the question whether the judgment rendered in the Entrevia case is appealable or not. There is no motion to dismiss, and, as all the facts in each case have to be considered in acting on the other two cases, the dismissal, if ordered, would not, as we see the situation, serve any legal purpose.

Defendants contend that the ruling overruling their exception of no cause of action was erroneous, and pray that it be reviewed and reversed. The exception is based on the averments contained in articles 6, 7, and 8 of plaintiffs' petition:

"Art. 6. That said Wade De Laune was driving at a negligent rate of speed; that said Max Fisher was operating his car without lights either front or rear and that the impact of the said Clayton truck and the said Max Fisher car knocked the said Fisher car some 150 feet up the road, or said Max Fisher, after his car had been struck from the rear by the Clayton truck, drove his car about 150 feet up the road and bringing it to a stop over on the left side of the said highway going toward Franklinton or on the right coming toward Bogalusa, said car being left diagonally across wrong side of said highway.

"Art. 7. That immediately after Max Fisher brought his car to a stop, he and the other occupants got out of the car and left it standing unguarded and unattended and without lights on the wrong side of said highway directly in the path of all traffic coming toward Bogalusa and went back to where the Clayton truck was standing down the highway.

"Art. 8. Your petitioner now alleges that it was a very foggy morning and difficult to see at a distance, and that the said Max Fisher was grossly negligent to leave his car in such a position. * * *"

Quoting these averments, defendants argue that plaintiffs admit an efficient and intervening act of negligence and fault on the part of Fisher in between the first and second collisions, not connected with the first collision, and in which Fisher's independent fault and negligence was solely responsible for the impact between his automobile and the Entrevia truck in which the Entrevia truck was damaged and the plaintiffs Nettles and Penton received the injuries on account of which their claim for damages is based. .

If the above averments stood in the petitions of the respective plaintiffs alone, the position of defendants would seem to be unanswerable, but articles 4, 5, 11, and 12 contain charges from which it may be said that the fault and negligent driving and operation of the Clayton truck was the sole and proximate cause of the collision between the Fisher automobile and the Entrevia truck. Plaintiffs sought by amendments to remove the inconsistency. In each case after the exception was filed, but before the court ruled on the question, the plaintiffs filed an amended and supplemental petition, the purpose and object of which was to remedy the objections urged against the original petition and caused it to be served on defendants. Defendants, contending that the amendment did not remedy the situation, filed another exception of no right or cause. It seems that the matter was argued and submitted to the court, but, before the court ruled, the plaintiffs filed in each case another amended and supplemental petition and caused same to be served on the defendants. Defendants objected to this last amended and supplemental petition, alleged that it changed the substance of the demand, moved in each case to strike it out, filed another exception of no cause of action, etc., and the entire matter was then submitted to the court.

The court, giving written reasons, held that the first and second amended and supplemental petitions were timely permissible and should be taken into account as part of plaintiffs' pleadings; that taken together they set forth a cause of action in solido against all the defendants. The defendants were relieved from answering a certain statement incorporated in the second amended and supplemental petition, but were required to answer the other averments.

██ It is well settled that a petition, excepted to as containing no cause of action,

may be amended by an amendment served on the defendant before the exception is ruled on and before issue joined and which does not change the substance of the demand, and, if the amendment serves to promote justice and to prevent bringing a new suit concerning the same matter, a ruling allowing the amendment will not be interfered with unless manifestly erroneous. In this instance, after considering the averments in the original petition, the apparent inconsistencies, and the two amended and supplemental petitions, we think the ruling in each case was correct.

■■■ On the merits there is an irreconcilable conflict between the testimony of Max Fisher and his wife on one side and De Laune, Blunt, and Bolton, employees of Clayton, on the other. According to Fisher and wife, when they left home it was dark and very foggy. They say positively that the tail-lights on their automobile were burning when they started on their trip. ·Fisher drove, his wife occupying the front seat with him, and a man named Bernstein occupied the back seat. When their automobile was struck in the rear by defendant's truck, Bernstein was by the impact knocked out of the automobile and fell on the ground. Bernstein, however, was not produced as a witness, and no explanations are offered ·on the subject. Mr. and Mrs. Fisher estimate their speed at the time their automobile was struck at about 20 or 25 miles per hour.

Defendants' three witnesses, De Laune, Blunt, and Bolton, say that the Fisher automobile had stopped in the road at the time and had no tail-lights burning, at least they saw none. The testimony of Fisher and wife that their automobile was going at the rate of 20 or 25 miles per hour when struck, and that of De Laune, Blunt, and Bolton that it had stopped, cannot be reconciled. The lower court, speaking of the defense witnesses on this subject, says: "But their testimony is so unsatisfactory and unreasonable as to make it worthy of little weight, I have therefore eliminated their testimony entirely from consideration."

As there are no physical facts or circumstances supporting either side and as Mr. and Mrs. Fisher have no appreciable interest in the result of the suit, nothing to gain or lose should it be decided either way, and as their testimony has impressed us as being credible and reliable, we have decided to accept their statements as true. As for the tail-lights on their automobile, they did not know as a fact whether they were burning at the time of the impact or not, but the lights were burning when they left home, and, as they had been driving on a paved highway but a few minutes, it is likely that they were burning when struck. Under the provisions of the Civil Code, art. 2282, we cannot say that the court erred in putting aside the testimony of the three defense witnesses. They were in the actual service and pay of Clayton. It is our conclusion that, when Fisher was struck from behind, he was driving on the right side of the road in the direction he was going at about the speed estimated by him, and that the tail-lights on his automobile were likely burning. But suppose they were not, De Laune, driver of the Clayton truck, coming in the road behind him, should have seen the Fisher automobile in his immediate front under the headlights of his truck and avoided striking him.

Act No. 296 of 1928 was the law in force at the time. Section 5 (a) and (b) provides:

"(a) Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such speed as to endanger the life, limb or property of any person.

"(b) Subject to the provision (a) of this section and except in those instances where a lower speed is specified in this Act, it shall be prima facie lawful for the driver of a vehicle to drive at a speed not exceeding the following, but in any case when such speed would be unsafe it shall not be lawful."

Section 15 (b): "The driver of a vehicle shall not overtake and pass another vehicle proceeding in the same direction upon the crest of a grade. * * *"

Section 48: "Windshields must be unobstructed and equipped with wipers."

Section 50: "Every vehicle upon a highway within this state during the period from a·half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible any person on the highway a distance of two hundred feet ahead, shall be equipped with lighted front and rear lamps or reflectors as in this section respectively required for different classes of vehicles and subject to exemption with reference to lights on parked vehicles as declared in Section 57."

The further provisions of sections 50, 51, and 52 are pertinent to the situation, and ref-

erence may be had thereto. We think it well to say, however, that the lighting power required under these sections for headlights contemplates normal atmospheric conditions and not such as existed at the time in question. Most of the witnesses say that visibility was restricted to from 20 to 25 feet. The driver of the Clayton truck says they were going about 25 miles per hour, and that he could see through the darkness and fog about 25 or 30 feet ahead. Mechanics, apparently not interested in the result of the case, say that the Fisher automobile received a heavy crushing blow from behind. We have already seen that the impact knocked Bernstein out of the automobile. Mr. and Mrs. Fisher say they were rendered almost powerless by the blow. Mechanics say that the blow from behind broke the steering rod on the Fisher automobile and put out both front and rear lights. In order to overtake and strike with such driving force an automobile running 20 or 25 miles an hour, the Clayton truck must have been going twice as fast or faster. Such speed in the darkness and fog was reckless and without regard for the law.

At the time of the impact the Fisher automobile had just passed over the crest of a hill and was going down on the other side. The crest of the grade might have concealed it from the momentary view of the driver of the Clayton truck. Defendants' truck was not equipped with a windshield wiper. De Laune and the other two occupants of the truck say they kept the windshield wiped, and, if it was done well, the intendment of the law was satisfied, but the result indicates that it is not likely that it was kept transparent and in condition that the view ahead was not obstructed.

Our conclusion on this phase of the case is that visibility, due to darkness and fog, was so poor that nobody should have been driving on the highway faster than their speed enabled them to stop within the distance their headlights showed them objects in the road ahead, save in the exceptional instances, which the Supreme Court mentions in Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L. R. A. 1917F, 253, and Woodley & Collins v. Schusters' Wholesale Produce Co., 170 La. 527, 128 So. 469. We have concluded, that the evidence shows that the impact between the Fisher automobile and defendant's truck was due solely to the fault and negligence of the defendant, his agents and employees in driving his truck.

The next question is an alleged inter- vening cause between the first impact and the subsequent one which took place between the Fisher automobile and the Entrevia truck. On this subject defendant relies on the averments in plaintiffs' petition, urged as ground for his exception of no cause of action, taking the position that this second impact was not produced by the first one, but was due solely to fault and neglect of Fisher. Mechanics testify that the steering gear on the Fisher automobile was broken by the first impact. Fisher testifies that he could not control his automobile as it continued down the hill. It also rolled down the hill in darkness and remained in darkness when it stopped. Mechanics say that the lights on it front and rear were put out as the result of the rear end collision. In such a situation Fisher's course down the hill and the fact that his automobile stopped in darkness at the foot of the hill on the wrong side of the road, angling across the road, was not due to the act of Fisher, but was the result of defendants' negligence and fault. We accordingly find, that the intervening cause upon which defendants rely is not supported by the evidence.

The Entrevia truck was not equipped with a wiper. Penton testifies that they kept the windshield wiped, and says that Lige Pope, an employee riding on the truck, wiped it off just before they hit the Fisher automobile. We can no more hold that the wiping of the Entrevia windshield was not effective than we were able to do in acting on the same condition as to the Clayton truck.

Defendant alleges that the contributory fault and neglect on the part of the driver of the Entrevia truck served to bring about the impact between his truck and the Fisher automobile; that the driver, Grant Penton, saw or should have seen the Fisher automobile ahead of him in the highway in time to have stopped and avoided striking it.

The provisions of Act No. 296 of 1928 heretofore mentioned governed. The Entrevia truck was going eastward on the highway. The plaintiffs, Penton and Nettles, are interested in the result of the suit and are besides in the actual service and pay of Entrevia. The other witness, Lige Porter or Pope, was also an employee. They testify that the Entrevia truck was being driven at about 15 or 20 miles an hour; that you could not see more than 15 or 20 feet ahead; that, as their truck came down a hill and started across the level space at the foot of the hill, they saw the Fisher automobile 15 or 20 feet

ahead in an angling position across the road on the side of the road on which they were driving.

We have seen that the Fisher automobile rolled down the hill in darkness and those on the Entrevia truck approaching from the west could not see it descending the hill and when it stopped at the foot of the hill it was shrouded in darkness from parties approaching from the west. The headlights on the Entrevia truck, however, should have exposed it to the view of those on the truck within the distance they could see ahead. Penton says he could have stopped had he been able to remain on the pavement. But not being able to tell at the instant whether it was moving or not and seeing at the same time the light of another automobile, which was no doubt the Clayton truck, further up the hill, he applied his brakes, but instead of stopping he swerved to the right. In turning to the right his right wheels went off the pavement, and in moist slick soil on the shoulder of the road his brakes were unable to stop his truck, with the result that the front end of his truck impacted against the front end of the automobile, causing the damage sustained by the truck and the injuries received by the plaintiffs Nettles and Penton.

Penton, it seems, applied his brakes as soon as he saw the danger, and it seems to us under facts and circumstances, requiring instant thought and action, that Penton, upon seeing an automobile in front of him in the darkness and fog on the wrong side of and crosswise the road, is not to be blamed for not going straight ahead on the pavement with the hope that his truck would stop before it reached the automobile. It may be that in turning to the right off the pavement he used bad judgment, but it has been often held that a man, who is bound to act on the instant in an emergency, created not as a result of his own fault, will not be held negligent, if he makes a bad choice in the course pursued with a view of avoiding the instant and obvious danger which suddenly confronts him. If the headlights on the Fisher automobile had not been put out by the fault and negligence of the driver of the Clayton truck, the situation with driver of the Entrevia truck would have been the same as existed for the Clayton truck, but as it is we think the situation different.

It appears from all the testimony in the case that at the time of this impact the headlights on the vehicles of the parties on account of the fog did not show objects ahead in the highway for a distance greater than from 20 to 30 feet. Plaintiffs saw the Fisher automobile in the situation in which it had stopped about as quickly as it was possible to do so.

In the case, Jacobs v. Jacobs, 141 La. 272, page 284, 74 So. 992, 996, L. R. A. 1917F, 253, the Supreme Court, quoting a Wisconsin case (Lauson v. Town of Fond du Lac, 141 Wis. 57, 123 N. W. 629, 25 L. R. A. [N. S.] 40, 135 Am. St. Rep. 30), which it seems supports the general proposition that it is the duty of the driver of an automobile to maintain a speed sufficiently slow and maintain such control of his car that he can stop within the distance in which he can plainly see an object or obstruction ahead of him, held that the general rule is subject to certain modifications. The court said: "It cannot apply to a case where an object or obstruction which the driver of an automobile has no reason to expect appears suddenly immediately in front of his automobile." This decision was rendered in 1917 and previous to the enactment of Act No. 296 of 1928, but the reasoning of the court is applicable to a situation of the kind stated, that is, if automobiles are permitted to operate under such conditions, as existed at the time in question.

Woodley & Collins v. Schusters' Wholesale Produce Co., 170 La. 527, 128 So. 469, 470, has been decided since the enactment mentioned. In that case, with two judges dissenting, the court used the following language in a case in which the facts bear some resemblance to the present: "Whether it should be deemed negligence for the driver of an automobile to fail to slow down, in a case like this, depends so much upon the circumstances of the particular case that it is not easy nor safe to lay down a hard and fast rule on the subject."

From Cyclopedia of Automobile Law by Huddy (9th Ed.) subject, Safety of Highways for Motor Vehicles, § 246, p. 390, we take the following: "When traveling in the nighttime the rate of speed depends to some extent on the lighting of the machine. It should not be operated so fast, that it cannot be stopped within the distance that the lights would disclose obstructions or defects in the highway. But this rule may be confined to cases of obstructions which may be reasonably anticipated by the driver and not applied to a ditch across the road left without any warning of the danger. And the courts in some states in such cases refuse to hold a driver guilty of negligence as a matter of law."

The author says in the next section that the driver when proceeding in a fog must measure his speed by his vision.

The situation with the plaintiffs under our appreciation of the facts brings their case within the modification recognized in the cases and authority cited. Penton was driving about as slow as he could, and seems to have been on the lookout for danger ahead, but an automobile suddenly appearing in the darkness ahead on the wrong side of the road without lights and diagonally across the road, apparently blocking his way, was something which he had no reason to expect and could not discover any sooner than he did. The situation with the driver of the Clayton truck in overtaking and running into the rear of the Fisher automobile was different. It is our opinion that the lower court properly rendered judgment in favor of each of the plaintiffs.

Defendants contend that the amounts allowed Nettles and Penton are excessive and urge a reduction. The testimony concerning the extent of the injuries suffered by Nettles and Penton seems to us to require the amount allowed in each case. For these reasons the judgment appealed from herein is affirmed. Defendants-appellants to pay the costs in both courts.