**O'ROURKE·v. McCONAUGHEY. ***

**No. 15000.**

Court of Appeal of Louisiana. Orleans.
Nov. 26, 1934.

L. E. Jung, of New Orleans, for appellant.

Wm. H. McClendon, Jr., of New Orleans, for appellee.

LECHE, Judge ad hoc.

This is a suit for damages resulting from an automobile collision on Canal boulevard in the city of New Orleans. Canal boulevard is a wide thoroughfare having two paved roadways with a neutral ground in the center. It runs from City Park avenue in the direction of Lake Ponchartrain to Robert E. Lee boulevard and traverses that section of the city known as "Lakeview." The upper side of Canal boulevard carries traffic in the direction of City Park avenue and the city proper. On the morning and at the time of the collision a heavy fog enshrouded the scene of the accident and vicinity thereof. Plaintiff, accompanied by a passenger, was driving his automobile on the upper side of Canal boulevard in the direction of City Park avenue, traveling close to the left-hand or neutral ground curb and proceeding very slowly because of the density of the fog. On reaching a point between Hidalgo street and Navarre avenue the engine stalled and the car stopped close to the left-hand curb of Canal boulevard. Plaintiff alighted, went around to the front of his car, and proceeded to turn over his engine with the hand crank.

+Rehearing denied January 7, 1935.

All of the lights on the car were burning and plaintiff's passenger was continuously sounding the horn as a warning to approaching traffic. Defendant was driving his automobile on Canal boulevard in the direction of City Park avenue and close to the left-hand curb thereof, proceeding in the same manner as plaintiff before plaintiff's engine stalled. Because of the enveloping blanket of fog restricting defendant's vision and the penetration of his headlights to within five or six feet beyond his radiator, he was driving his car very slowly by intermittently slipping his clutch and applying his brakes. When plaintiff's car loomed ahead, defendant immediately applied his brakes, but was unable to avoid striking the rear of plaintiff's automobile, although greatly lessening the force of the blow. Plaintiff's car, the hand brake of which was not set, rolled forward and an ornamental radiator cap projecting beyond the front of the radiator pierced plaintiff in the right shoulder while he was in the act of cranking. The car rolled several feet from the impact, plaintiff clinging to the headlights and being dragged for that distance. Plaintiff's car was stopped for approximately five minutes before being struck, and the collision occurred at about 8 o'clock in the morning during the peak traffic hour when the residents of Lakeview were driving into the city to their various places of business.

Plaintiff alleged that the collision was due solely to the negligence of defendant for not having his car under such control as to enable him to come to a complete stop within the radius of his vision or the distance within which his headlights penetrated. Defendant claimed that he was guilty of no negligence and alleged that even if negligence be found on his part the contributory negligence of plaintiff bars any recovery. He alleged that the negligence or contributory negligence of plaintiff consisted in improperly parking and failing to post a lookout to warn approaching vehicles.

Judgment was rendered in favor of defendant, and plaintiff has appealed.

A careful research of the jurisprudence reveals the following authorities as pertinent to this case:

In Jacobs v. Jacobs, 141 La. 272, 74 So. 992, 996, L. R. A. 1917F, 253, defendant drove his car into an open canal which crossed the street on which he was driving at right angles; the bridge across the canal being out of alignment with or offset from the roadway. The accident occurred in the nighttime. The court said:

"The question of law to be decided is whether the defendant was guilty of negligence in his failure to maintain such a slow speed that he might have avoided the accident when he saw the danger. * * *

"We are referred to the decision of the Supreme Court of Wisconsin in the case of Lauson v. Town of Fond du Lac, reported in 141 Wis. 57, 123 N. W. 629, 25 L. R. A. (N. S.) 40, 135 Am. St. Rep. 30, to support the general proposition that it is the duty of the driver of an automobile to maintain a speed sufficiently slow, and maintain such control of his car, that he can stop within the distance in which he can plainly see an object or obstruction ahead of him. That rule is subject to certain modifications. It cannot apply to a case where an object or obstruction which the driver of an automobile has no reason to expect appears suddenly immediately in front of his automobile. * * *

"The rule is well established in the jurisprudence of this state that a person using a public highway, especially in an incorporated city, has a right to presume and to act upon the presumption, that the way is safe for ordinary travel, even at night, and he is not required to be on the lookout for extraordinary dangers or obstructions to which his attention has not been called."

In the case of Parlongue v. Leon, 6 La. App. 18, plaintiff was making some repairs to his car which was parked on the right side of the road. Defendant's automobile struck the rear of plaintiff car, damaging same and injuring plaintiff. This court said:

"The Supreme Court has decided that it is not negligence to stop an automobile upon a highway momentarily for the purpose of making urgent repairs to it. Southall v. Smith, 151 La. 967, 92 So. 402 [27 A. L. R. 1194].

"It is negligence to stop an automobile upon the highway after dark without headlights or back lights. But this negligence does not justify another automobile to run into it negligently, nor absolve it from responsibility if, by the use of ordinary care, the collision could have been avoided. The question whether the plaintiff had lights in front or the rear of his automobile at the time of the accident is asserted by the plaintiff and denied by the defendant. Assuming that the plaintiff had no lights at all, he can fail to recover only if defendant, in the absence of those lights, could have avoided the collision by the exercise of proper care. * * *

"Huddy on Automobiles, p. 360, § 307:

" 'Reasonable care requires in many cases that the driver of a motor vehicle drive at a slower speed at night than during the day. One restriction on his speed is that he shall keep the machine under such control and operate it at such a speed that he can stop the machine and avoid an obstruction or danger or another traveler within the distance that the highway is illuminated by his lights.'

"Also p. 937, § 715.

"The defendant violated this rule."

In Pepper v. Walsworth, 6 La. App. 610, plaintiff stopped his car on the right side of the road to repair it. The repairs being completed, he re-entered and started his automobile and while moving forward slowly, in low gear, was struck in the rear by defendant's automobile which was traveling in the same direction. Defendant contended that he was blinded by the headlights of a car approaching from the opposite direction. The court held:

"The question then arises, whether it was negligence for the driver to meet this approaching car, when he was blinded by its lights, at a speed of twenty-five miles an hour?

"We think it was.

"It was not only negligence, it was reckless driving. The driver of an automobile has no right to assume that the road before him is open, and to proceed ahead without regard to the safety of those who may be therein. To proceed ahead when one is utterly blinded, as the driver of this car says he was, at a speed of twenty-five miles an hour, is the grossest kind of negligence.

"When a driver finds that he is unable to see the road ahead of him, for any reason whatever, whether blinded by bright lights, smoke, dust, fog or for any other reason, it is his duty to at least bring his car under such control that it can be stopped in a moment in case of emergency, and in extreme cases it is his duty to stop. * * *

"The rule that a person driving an automobile at night, who finds himself blinded by the lights of an approaching car must slacken his speed and have his car under such control that he could stop it immediately if necessary to avoid striking those rightfully in the road ahead of him, is sanctioned by the courts of last resort in every state of the Union where the question has been raised.

"See cases reported and note following them in: [Woodhead v. Wilkinson, 181 Cal. 599, 185 P. 851] 10 A. L. R. 291; [Mathers v. Botsford, 86 Fla. 40, 97 So. 282] 32 A. L. R.

881; [Hatzakorzian v. Rucker-Fuller Desk Co., 197 Cal. 82, 239 P. 709] 41 A. L. R. 1027.

"In the case at bar it is perfectly apparent that it was not the absence of a tail-light on plaintiff's car which brought about the collision but, on the contrary, it was caused by the fact that the driver of defendant's car was so blinded by the glare of the bright lights of the car approaching from the other direction that he could not see ahead of him.

"The driver of defendant's car, in failing to observe the proper precautions, was guilty of negligence, and it was his negligence which brought about the accident.

"Defendant pleads contributory negligence in bar of plaintiff's action.

"Conceding that plaintiff was negligent in not equipping his car with proper lights, yet to defeat his recovery for damages caused by defendant's driver negligently running into his car from the rear it would have to appear from the evidence that his negligence in that respect contributed to the accident and was the proximate cause thereof.

"The mere fact alone that plaintiff was guilty of some negligence does not necessarily bar his recovery. * * *

"It is well settled that the failure to comply with the provisions of a statute regulating the use of motor vehicles on the highways is negligence, but it is equally well settled that where such negligence alone is plead in bar of recovery it must be shown that there was a causal relation or connection between the negligence arising from the violation of the law and the accident and injury."

In Testard v. Board of Commissioners of Port of New Orleans, 8 La. App. 238, plaintiff was driving down St. Charles avenue, and, observing a friend waiting for a street car, stopped his automobile near the neutral ground and a little beyond the intersection for the purpose of picking up his friend. A Ford car immediately following plaintiff swerved to the right and passed plaintiff's automobile, but defendant's car, which was following the Ford, came straight on and struck the rear of plaintiff's car. This court held:

"It is admitted that plaintiff was guilty of a violation of the City Ordinance, as in fact he clearly was as appear by reference to the following provision:

" 'On streets divided by a neutral ground, no vehicle shall stop next to either curbing of the neutral ground.'

"It is insisted, however, that plaintiff's negligence was not the cause of the accident

which is averred to be due to defendant's fault, in that its car was not operated at a speed sufficiently slow, and under such control that it could be stopped within the distance in which he can plainly see an object in front of him. The rule invoked is undoubtedly sound, but it has no application here because the car of plaintiff could not be seen until the Ford had been forced out of the line by the sudden stopping of plaintiff's car, and when seen created a hazard which defendant's driver had no reason to anticipate, nor guard against. In fact, there was every reason to expect the contrary for it must be presumed that automobile drivers will observe the traffic ordinance. His only chance to avoid the accident was by turning sharply to the right as the driver of the Ford did, but this he could not do, because of the presence of the Buick car abreast of him. See Jacobs v. Jacobs, 141 La. 272, 74 So. 992 [L. R. A. 1917F, 253]."

In Pollet v. Robinson Lumber Co., 10 La. App. 760, 123 So. 155, plaintiff, driving along the highway at night, swerved left to pass a car in front of him and ran into some mules which were being driven along the highway. This court held:

"However, if it be held that to ride a mule along the highway without a light is negligence, even in the absence of a statute or an ordinance, still, under the jurisprudence of Louisiana, it is contributory negligence for a motorist to operate his car at such a speed, or in such a manner, that he cannot stop it within the distance illuminated by its lights. * * *

"Conceding, then, arguendo, that the driver of the mules was negligent in not having a light on them, the contributory negligence of plaintiff himself was the proximate cause of the collision, because, had he had his car under such control as would have permitted his stopping it within the distance illuminated by his lights, the accident could not have occurred."

In Dominick v. Haynes Bros. et al., 13 La. App. 434, 127 So. 31, 32, the cars involved, going in opposite directions, entered a dense smoke screen covering several hundred feet of the highway. The drivers of both cars were warned by guards before entering the smoke area to turn on their lights and to keep to the right. The court there said:

"It was negligence for both drivers or either of them to enter the smoke screen that prevented them from seeing any appreciable distance ahead. It was also negligence to drive at a rate of speed of fifteen miles per hour after having entered the smoke.

"The facts of this case, including the width of the road and all, are very similar to the case of Castille v. Richard, 157 La. 274, 102 So. 398, 37 A. L. R. 586, in which the court held:

" 'Drivers of automobiles on narrow road approaching in opposite directions, who failed to stop until impenetrable cloud of dust raised by third automobile in passing one of them had subsided, held negligent.'

"The court in this case held both parties negligent and rejected their demands.

" 'It is the duty of the driver of an automobile to stop his car when his vision is entirely obscured by a temporary obstruction, such as a cloud of dust or smoke screen. When failure to do so would jeopardize the safety of others, then he must remain at a standstill until the obstruction has come to an end.' Blashfield's Encyclopædia of Automobile Law, vol. 1, p. 370.

"The law of comparative negligence is not recognized in this state, and when one by his own acts of negligence contributes to the accident he is barred from recovery."

In Futch v. Addison et al., 12 La. App. 535, 126 So. 590, defendants left a truck and trailer, loaded with logs, parked on the highway without lights. The court in that case said:

"The evidence shows that plaintiff was driving southward on the highway; he was not drinking, and was driving at a moderate speed. The obstruction was located 25 or 30 feet south of a bridge. The ground had been built up about 1½ or 2 feet at the approach to the bridge on each side. The bridge was not as wide as the roadway, and there were railings on each side of it. It also happened that, just as plaintiff reached the bridge, two automobiles were coming northward with glaring headlights; one of them was so near the bridge when plaintiff entered on it that it was necessary for it to slow down in order that plaintiff might get over the bridge before the one nearest entered on it. As plaintiff passed over the bridge, the other automobile, coming north, was about opposite the truck, and plaintiff had to swerve his car to the right as he crossed the bridge, in order to make way for it. The elevation of the road at the bridge, the railings at the ends of the bridge, together with the glaring lights on the two on-coming automobiles, all helped to hinder plaintiff from seeing the obstruction in the road ahead of him until he was,

as he says, within 10 feet of it, and too close to avoid striking it head-on, as he did.

"Leaving on the highway, unguarded and without lights, such a dangerous menace to everybody using the road after dark, was in violation of Act No. 296 of 1928, § 39. It was also such an act of inexcusable negligence that defendant's liability on account of having left it there is too plain for argument."

In Stafford v. Nelson Bros., 15 La. App. 51, 130 So. 234, 235, the defendant, contractor, left an excavating machine, without lights, parked on a concrete highway obstructing nearly one-half of the roadway. Plaintiff ran his automobile into this machine, totally wrecking his car and suffering severe personal injuries. The court said:

"We hold that it was inexcusable negligence for defendants to have allowed this machine to stand on and cover about half of the pavement of that highway without lights. As it clearly appears that defendants were in that respect at fault or negligent, the sole question remaining for decision is as to whether or not plaintiff, Stafford, who was driving his car, contributed to the accident, by not seeing the machine, or that he should have seen it in time to avoid the collision, but ran into it through his own fault or for failure to exercise ordinary care under the circumstances. * * *

"The defendants say Stafford could and should have seen that machine in time to avoid the collision, and that it was by his negligence that he ran into it. * * *

"Mr. Warner, another witness for plaintiff, says he was driving between thirty and thirty-five miles over this highway and saw the crane of the machine only when he was about forty feet from it. It was about 7 o'clock when Mr. Warner passed the machine, while Stafford went up against it half an hour later when it is very probable thicker darkness had settled over the highway.

"It would be unreasonable, under the circumstances then existing there, to say that Stafford could or should have seen the machine sooner than he did. * * *

"Let us say, however, that Stafford, on seeing the machine, instead of going around it, should have applied his brakes to stop his car. Accepting this view of the case, he would not, however, be responsible in damages, because the defendants by permitting the machine to remain on the highway, without lights, had by their own fault created an emergency there, and from which it follows that defendants had created two hazards with which Stafford was suddenly confronted. In being placed in such a perilous position, he had to take the risks of applying his brake or of attempting to go around the machine so as to avoid striking it. We are of the opinion that he actually exercised the ordinary care which any prudent person would have taken confronted, as he was, with imminent danger to his life or bodily harm. Even if he did not exercise the best judgment considering the situation in which he had been placed by the inexcusable negligence of the defendants, he cannot be held liable for the results of the collision."

In Hanno v. Motor Freight Lines, Inc., 17 La. App. 62, 134 So. 317, 318, the court said:

"The evidence, we think, shows a clear case of negligence on the part of the driver in charge in having left this large truck, with a trailer behind it, loaded with nearly five tons of freight, on the public highway, at night, without any lights, unguarded, and with no sign whatever of it being there except its own form. The question of negligence in such cases was presented before this court in two recent cases, and the act in each instance was severely condemned. * * *

"Counsel for defendant relies principally on that rule which he takes from certain cases, a good many of them being from other states, to the effect that it is the duty of the driver of an automobile at night to keep his car under such control so that, in case he meets another car and is blinded by its lights, he can bring his car to a complete stop within the distance on the road illuminated by his own lights. We find that to be a correct statement of what the rule is in the cases cited, but we are of the opinion that its application depends entirely on the facts and circumstances arising in each case. In the latest case referred to by counsel, Woodley & Collins v. Schusters' Wholesale Produce Co., Inc., 170 La. 527, 128 So. 469, 470, the Supreme Court of this state holds that it is not an inflexible rule. We quote the following:

" 'Whether it should be deemed negligence for the driver of an automobile to fail to slow down, in a case like this, depends so much upon the circumstances of the particular case that it is not easy nor safe to lay down a hard and fast rule on the subject.' * * *

"We are of the opinion that a person who is blinded by the lights of a car coming from an opposite direction is called on to exercise great caution and have his car under such control as to safely meet any ordinary emergency which may present itself on the road,

because of the darkness, but we are not prepared to hold that he is expected to be able to stop his car, almost on the spur of the moment, when, as in this case, he finds himself confronted suddenly with a situation of extreme peril on the highway such as had been created by this defendant. The situation of emergency was not an ordinary one, as persons are not permitted to leave unguarded, and without lights, trucks or vehicles parked on the public highway after dark. There is another rule of law, equally as well recognized as the one contended for by counsel for defendant in this case, to the effect that the driver of an automobile, confronted with imminent danger to his life or bodily harm, will not be held liable for the results of a collision, even though he did not exercise the best judgment, considering the situation in which he had been placed by the inexcusable negligence of the defendant. This last rule was applied in Stafford v. Nelson Bros., 15 La. App. 51, 130 So. 234, a case where the facts were very much similar to those presented here."

In the dissenting opinion in the Hanno Case the following is stated:

"The rule is that a motorist on a highway at night must keep his car under such control that he can stop and avoid an obstruction within the distance that his headlights illuminate the way."

In Holcomb v. Perry, 19 La. App. 11, 138 So. 692, 696, the court said:

"Defendant, of course, invokes and relies upon the doctrine that it is the duty of the driver of an automobile at night to maintain a speed sufficiently slow and to have such control of his car that he can stop within the distance in which he can plainly see an obstruction or danger ahead. In the case of Jacobs v. Jacobs, 141 La. 272, 74 So. 992, 996, L. R. A. 1917F, 253, Chief Justice O'Niell held that this rule is subject to certain modifications, and said:

" 'It cannot apply to a case where an object or obstruction which the driver of an automobile has no reason to expect appears suddenly immediately in front of his automobile.'

"In the present case plaintiff had no reason to expect an obstacle in the middle of the road unguarded, such as suddenly appeared immediately in front of him. Furthermore, these long slender poles, on account of their nature and general appearance, could not be easily discerned in the dark at night, no more so than could a rope or wire suspended above the road."

In Woodley & Collins v. Schuster's Wholesale Grocery Co., Inc., 12 La. App. 467, 124 So. 559, 561, the court said:

"While it is true that the failure to comply with the provisions of a statute regulating the use of motor vehicles on the highways is negligence, it is equally true that where such negligence alone is pleaded as creating a liability it must be shown that the negligence arising from the violation of the law was the proximate cause of the accident; and we are of the opinion that, considering the circumstances prevailing immediately before the collision, not the absence of a tail-light from defendant's trailer, but the failure to stop or reduce the speed of plaintiffs' car was the proximate cause of the accident."

In affirming the judgment of the Court of Appeal the majority opinion of the Supreme Court, 170 La. 527, 128 So. 469, 470, states:

"We are not prepared to say that the Court of Appeal erred in its ruling that the proximate cause of the accident was the failure of the driver of the plaintiff's car to reduce his speed, and to have the car under such control as to be ready to stop instantly, when he became blinded by the headlights of the approaching car. The doctrine is stated in 42 C. J. 929, § 640, thus:

" 'A speed which might be reasonable and proper under ordinary circumstances may be excessive and improper where the driver's view of the highway is in any way interfered with, as where he is confused or partly blinded by the headlights of an approaching vehicle, or is driving through fog, smoke, or dust, or his windshield is covered with sleet and snow, or rain.'

"In Castille v. Richard, 157 La. 274, 102 So. 398, 399, 37 A. L. R. 586, where two automobiles met and collided on a road only eighteen or twenty feet wide, and in a cloud of dust sent up by the passing of another automobile, this court, went so far as to hold that it was 'inexcusable negligence' on the part of the drivers of the colliding automobiles 'not to have come to a full stop until the dust had subsided.' If the road had been wider, perhaps we would have deemed it sufficiently prudent for the drivers to slow down so that they could stop in a moment's warning. Whether it should be deemed negligence for the driver of an automobile to fail to slow down, in a case like this, depends so much upon the circumstances of the particular case that it is not easy nor safe to lay down a hard and fast rule on the subject."

In Raziano v. Trauth, 15 La. App. 650, 131 So. 212, 213, this court said:

"It is admitted that plaintiff was guilty of negligence. He left his truck unattended on a narrow public thoroughfare, with his motor running without setting his brakes. He was guilty of violating sections 26 and 28 of Act No. 296 of 1928, which require that an unattended parked motor vehicle shall have its brakes set and its motor stopped, and shall be so parked as to leave a clearance of 15 feet on the traveled portion of the highway for free passage of other vehicles. He was also guilty of violating section 50, paragraph (d), of the same act, requiring motor vehicles to carry a red light on their rear. We have some doubt as to whether there was any light at all on the plaintiff's truck, but there is no contention that there was any on the rear. The sole question is whether defendant had the last clear chance of avoiding the accident.' * * *

"The fact that he did not see the truck until so close upon it cannot excuse him, for he must be held to have seen what he should have seen, or what a man of ordinary eyesight could have seen, and, if the fog affected his vision, he should not have maintained a speed of 20 miles an hour knowing that he was driving on a very narrow thoroughfare. * * *

" 'Huddy on Automobiles, p. 360, § 307:

" ' "Reasonable care requires in many cases that the driver of a motor vehicle drive at a slower speed at night than during the day. One restriction on his speed is that he shall keep the machine under such control and operate it at such a speed that he can stop the machine and avoid an obstruction or danger or another traveler within the distance that the highway is illuminated by his lights."

" 'Also p. 937, § 715.' * * *

"The case before us cannot be distinguished in principle from the case of Parlongue v. Leon, supra. The judgment in favor of defendant in reconvention must be reversed, as defendant had the last clear chance of avoiding the accident, and therefore his negligence was the proximate cause of the accident."

In Safety Tire Service, Inc., v. Murov, 19 La. App. 663, 140 So. 879, 881, the court said:

"We have also held that the automobile driver must keep a proper lookout ahead for obstructions in the highway, such as unlighted cars parked on the roadside, and cannot blindly drive along relying on the presumption that it is a violation of the law to leave an unlighted car parked on the roadside, and that no one will violate that law. * * *

"It therefore follows that if plaintiff's driver, when blinded by the lights of the car he was meeting, failed to reduce the speed of his truck to such a speed as to be able to stop the truck when confronted with the obstruction he was prevented from seeing, due to the blinding lights, he was guilty of negligence such as would ordinarily bar recovery. * * *

"The negligence of plaintiff's driver in this respect was a proximate cause of the accident and constituted contributory negligence such as to bar recovery.

"Plaintiff relies on the case of Hanno v. Motor Freight Lines, Inc., decided by the First Circuit, Court of Appeal, and reported in 17 La. App. 62, 134 So. 317. The opinion of the majority of the court in that case is directly in conflict with the ruling of this court and the Supreme Court of the state in the case above cited. The dissenting opinion of Judge Elliott is more in conformity with what we consider the jurisprudence of this state, and a universal ruling, with few exceptions."

In F. Strauss & Son, Inc. v. Childers (La. App.) 147 So. 536, 538, the court said:

"An operator of an automobile on a public highway in the nighttime should, and it is his bounden duty to, observe every rule designed to, and which in fact, if observed, does, contribute to the security and safety of travel thereon; and it is required of him, under penalty of responsibility for not doing so, that when his vision is obscured regardless of the cause, that he bring his machine under such control and operate it at such rate of speed that it may be stopped within the distance illuminated by its headlights; and, if necessary, in the interest of safety to himself and others, bring the car to a dead stop until the emergency confronting him, or the cause of interference with his power of vision, had ceased. A motorist has not the right to assume that his course of travel is free of danger or obstruction, in the absence of his ability to see clearly ahead. If he does so assume and continues to travel as though he knew there was perfect clearance ahead, he does so at his own risk and peril."

In Penton v. Fisher et al. (La. App.) 155 So. 35, 39, the court said:

"Our conclusion on this phase of the case is that visibility, due to darkness and fog, was so poor that nobody should have been driving on the highway faster than their speed enabled them to stop within the distance their headlights showed them objects in the road ahead, save in the exceptional

instances, which the Supreme Court mentions in Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L. R. A. 1917F, 253, and Woodley & Collins v. Schusters' Wholesale Produce Co., 170 La. 527, 128 So. 469. We have concluded, that the evidence shows that the impact between the Fisher automobile and defendant's truck was due solely to the fault and negligence of the defendant, his agents and employees in driving his truck. * * *

"From Cyclopedia of Automobile Law by Huddy (9th Ed.) subject, Safety of Highways for Motor Vehicles, § 246, p. 390, we take the following: 'When traveling in the nighttime the rate of speed depends to some extent on the lighting of the machine. It should not be operated so fast, that it cannot be stopped within the distance that the lights would disclose obstructions or defects in the highway. But this rule may be confined to cases of obstructions which may be reasonably anticipated by the driver and not applied to a ditch across the road left without any warning of the danger. And the courts in some states in such cases refuse to hold a driver guilty of negligence as a matter of law.' The author says in the next section that the driver when proceeding in a fog must measure his speed by his vision.

"The situation with the plaintiffs under our appreciation of the facts brings their case within the modification recognized in the cases and authority cited. Penton was driving about as slow as he could, and seems to have been on the lookout for danger ahead, but an automobile suddenly appearing in the darkness ahead on the wrong side of the road without lights and diagonally across the road, apparently blocking his way, was something which he had no reason to expect and could not discover any sooner than he did."

From the foregoing jurisprudence of this state the general rule emerges, by the weight of authority, that the operator of a motor vehicle on a public highway shall have his car under such control that he can bring it to a complete stop within the range of his vision or the penetration of his headlights. There is little question as to the applicability of the general rule with regard to driving in the daytime when the visibility is high and the vision unimpaired. It is in those cases involving darkness, fog, smoke, rain, mist, and other conditions affecting the vision of the operator that the courts have, in certain circumstances, sought to apply exceptions to the rule.

In Jacobs v. Jacobs, supra, the court laid down the rule as applied by the Supreme Court of Wisconsin which said: "That rule is subject to certain modifications. It cannot apply to a case where an object or obstruction which the driver of an automobile has no reason to expect appears suddenly immediately in front of his automobile." In that case the car was driven into an open ditch or canal and the language of the court applies to "extraordinary dangers or obstructions to which his attention has not been called," such as ditches or other defects in the roadway.

In Parlongue v. Leon, Pepper v. Walsworth, Pollet v. Robinson Lumber Co., Dominick v. Haynes Bros., Woodley & Collins v. Schusters' Wholesale Produce Co., Inc., Castille v. Richard, Raziano v. Trauth, Safety Tire Service, Inc., v. Murov, F. Strauss & Son v. Childers, and Penton v. Fisher, supra, it was held that it was the bounden duty of an operator of a motor vehicle to maintain a speed and control of his car which would enable him to stop within the range of his vision or the penetration of his headlights.

In Testard v. Board of Commissioners, supra, the accident occurred in the daytime and an emergency was created which could not be anticipated.

Futch v. Addison et al., Stafford v. Nelson Bros., and Hanno v. Motor Freight Lines, supra, we believe not to be in accord with the jurisprudence; the circumstances in those cases being such that we believe the driver of the automobile should have anticipated and been in a position to avoid the collision. The dissenting opinion of Judge Elliott in the Hanno Case correctly states the rule thus: "The rule is that a motorist on a highway at night must keep his car under such control that he can stop and avoid an obstruction within the distance that his headlights illuminate the way."

It must be remembered that the accident, in the present case, occurred in a dense fog, and the following language of Judge Westerfield in Peart v. Orleans-Kenner Traction Co., 11 La. App. 11, 123 So. 822, 823, is particularly applicable:

"Fog constitutes the greatest menace of transportation, whether upon land or sea, and is the most feared of all perils that confront the traveler. The 'pea soup' fogs of London are notorious for causing confusion and disaster in connection with pedestrian and vehicular traffic. Science, which in so many instances has relieved, or allayed, or

mitigated the difficulties which beset, and ills which afflict, mankind, seems helpless and hopeless in this particular, and has contributed nothing with which to combat this terror of transportation. To one who has been at sea, as has the writer, during the prevalence of a dense fog for some 48 hours, and observed the anxious expression of the navigator, his ceaseless vigil upon the bridge of the ship, the constant blasts upon the primitive fog horn, the sole protection relied upon, and has witnessed the depression of the passengers and crew, no further demonstration of the danger of fog is necessary.

"In the case of The Martello, 153 U. S. 64, 14 S. Ct. 723, 38 L. Ed. 637, it was held that a speed of 6 miles per hour is excessive for a steamer emerging from New York Harbor in a dense fog.

"In an English case it was held negligent for a boat to move at any speed in a dense fog. The Girolamo, 3 Hagg. Adm. 169.

"Excessive speed by vessels in a fog will not be excused, even though answering a cry of distress, and on a life-saving errand. The Nacoochee, 137 U. S. 330, 11 S. Ct. 122, 125, 34 L. Ed. 687.

"In the last-cited case the rule of the sea is stated to be, what has often been held with respect to the land:

" 'She (the vessel) was bound, therefore, to observe unusual caution, and to maintain only such a rate of speed as would enable her to come to a standstill, by reversing her engines at full speed, before she could collide with a vessel which she should see through the fog. This is the rule laid down by this court in the case of The Colorado, 91 U. S. 692, 23 L. Ed. 379.' "

If fog constitutes "the greatest menace of transportation whether upon land or sea," it likewise imposes the burden of most extraordinary and unusual care upon the operator of a vessel or vehicle navigating or traveling through the fog.

■ In the present case there was no doubt negligence on the part of plaintiff. His car was parked in violation of the City Traffic Ordinance. His brakes were not set and he placed himself in a position of extreme danger in attempting to crank his car under the circumstances. Furthermore, he was a resident of Lakeview and knew that at that hour of the morning there was heavy traffic on Canal boulevard going in the direction of the city. He was also aware of the density of the fog and the low state of visibility caused thereby. His tail-light was practically invisible until almost upon it and he posted no lookout to warn approaching traffic. The question is was his negligence such as to bar his recovery. We think that it was not. See Parlongue v. Leon, Pepper v. Walsworth, Pollet v. Robinson Lumber Co., Woodley & Collins v. Schusters' Wholesale Produce Co., Inc., and Raziano v. Trauth, supra.

Defendant was operating his automobile very slowly, yet he ran into plaintiff's car, which was stationary. He did not have his car under such control that it could be stopped within the radius of his vision or the penetration of his headlights. Plaintiff's negligence having expended itself, his car being stationary and having been thus for several minutes before the collision, defendant only was in a position to avoid the impact. His was the last clear chance. If the fog was too dense to permit a radius of vision in which his automobile could be stopped, it was his duty to proceed no further until he could see. In Castille v. Richard, supra, it was held to be the duty of an automobile driver temporarily blinded by a dust cloud to bring his car to a full stop until the dust had subsided. The same view was taken in Dominick v. Haynes Bros., supra; the court there quoting from Blashfield's Encyclopædia of Automobile Law, vol. 1, p. 370. See, also, Pepper v. Walsworth, supra.

If it is the duty to stop where the vision is temporarily obscured as by a cloud of dust or smoke, it is the greater obligation where the obstruction to the sight is more permanent as in a blanket of dense fog. In the former instance the danger is temporary and passing, while in the latter it is permanent and continuous and he who travels thus does so at his peril. It is no defense that traffic might be delayed indefinitely and business interfered with, as considerations of convenience must ever give way to the safety of life and limb.

■ The driver of an automobile has no right to assume that the road before him is open and to proceed ahead without regard to the safety of those who may be thereon. Pepper v. Walsworth, Safety Tire Service, Inc., v. Murov, F. Strauss & Son v. Childers and Penton v. Fisher, supra. While under certain circumstances creating an emergency the rule may be different, there is little or no excuse for running into a stationary object, particularly one which has been stationary for some time before the collision, whether it be daylight or dark, clear or foggy, misty or rainy. It is, therefore, our conclusion that this collision was caused by the negligence

of defendant who had the last clear chance to avoid same.

Plaintiff claims the following items of damage:

| | |
|---|---|
| Physical pain and suffering | $1,000.00 |
| Medical bill | 47.00 |
| Drug bill | 12.78 |
| Loss of salary | 39.00 |
| Loss of clothing | 25.00 |
| **Total** | **$1,123.78** |

A careful examination of the record convinces us that plaintiff is entitled to the sum of $500 covering all items of damage claimed by him.

For the reasons assigned the judgment appealed from is hereby annulled, avoided, and reversed, and judgment rendered herein in favor of plaintiff, Gaspar S. O'Rourke, and against defendant, Hugh G. McConaughey, in the full sum of $500 together with legal interest thereon from judicial demand until paid and for all costs.

Reversed.