No. 4246

Second Circuit

SAFETY TIRE SERVICE, INC., v. MUROV

(April 5, 1932. Opinion and Decree.)
(May 4, 1932. Rehearing Refused.)
(May 23, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

Dickson & Denny, of Shreveport, attorneys for plaintiff, appellee.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellant.

DREW, J. This is an action for damages arising out of a collision of a truck belonging to plaintiff with a truck of defendant that was parked on the roadside. The amount of damages claimed by plaintiff is $1,039.81, with legal interest thereon from December 19, 1930, until paid.

Plaintiff alleged that its truck, driven by its employee, was coming towards Shreveport from Benton, Louisiana; that it was night and that its driver was unable to see defendant's truck standing on the road and ran into the rear end of said truck, thereby damaging plaintiff's truck and the goods therein. It alleged the following acts of negligence on the part of defendant:

"In leaving the automobile truck with the end gate down and standing approximately in the center of the road, without lights or other warning signal which might show the presence of said truck on said highway at said time.

"In permitting said truck to be left on the highway at night, with the end gate down and extending about two and one-half feet from the rear of the bed of said truck and extending over the center of the highway, without any lights or other warning signals thereon in violation of the laws of the State of Louisiana, and with nothing to warn persons that said end gate was obstructing passage on said highway.

"In leaving said truck on said highway at night without lights or other signals or some person in attendance thereon to warn persons of the presence of said truck, and obstruction."

Defendant denied the acts of negligence alleged by plaintiff, and alleged that the proximate cause of the accident was:

"* * * the negligence of the driver of plaintiff's truck, acting within the scope of his employment and as agent of plaintiff, in driving plaintiff's said truck at a speed in excess of that provided for in Act 296 of the Acts of the State of Louisiana for the year 1928; in failing to keep a proper lookout on the road as he was driving at a high rate of speed, in failing to observe the truck of defendant in time to have avoided striking it; in driving at said high rate of speed while approaching and meeting a car proceeding in an opposite direction, with its lights shining so as to interfere with proper vision of the driver of plaintiff's truck to observe the presence of another vehicle on the road, all of which negligence bars plaintiff's recovery herein."

In the alternative, it pleaded contributory negligence, as above alleged, in bar of plaintiff's recovery.

There was judgment in the lower court in favor of plaintiff in the sum of $637.19, with legal interest thereon from judicial demand until paid; and from this judgment defendant prosecuted this appeal. Plaintiff has answered the appeal, praying that the judgment be increased to $839.81, the increase consisting of items of $25, for towing the truck in after the wreck, and $77.62, for damage to the tires on the truck as merchandise. The facts disclosed by the record are as follows:

Defendant's truck, traveling from Benton to Shreveport, broke down and could not be moved by its own power. The driver pushed it down the road a distance of about 150 feet to a point in front of a negro house, where he left it. The two front wheels of the truck were off the pavement

on the right-hand side, and the right rear wheel was also off the pavement. The rear left wheel was on the pavement, causing the truck to be in an angling position. The rear end gate of the truck was down, causing it to extend straight out behind the truck, as though it were a continuation of the floor of the truck. The road was paved and approximately eighteen feet wide, and the rear end of the end gate of the truck extended to within about two feet of the center line of the pavement.

When the driver left the truck in this position to go a distance of about one mile to a store to telephone his employer, the sun was setting and, although the driver knew he could not make the trip to the store and back before dark, he failed to leave any lights burning on the truck.

Plaintiff's truck was traveling from Benton towards Shreveport at a rate of 30 to 35 miles per hour, and, when nearing the parked truck of defendant was met by a car going towards Benton. Benton is north of Shreveport. The lights from this car blinded the driver of plaintiff's truck until just about the time they passed each other, and, necessarily, the driver of plaintiff's truck could not see back of the car, which was going north, on account of the lights. The driver of the car going north and plaintiff's driver are very nearly together in their testimony as to where they passed. One says 40 feet north of the parked truck and the other says 50 feet north of it.

Plaintiff's driver testified that immediately upon getting the glare of the lights of the northbound car out of his eyes, he saw the parked truck a distance of 40 feet ahead of him and attempted to cut behind the northbound car and to the left of the parked truck. He was not successful and struck the end gate of the parked truck. The parked truck was knocked a distance

of 18 or 20 feet into a ditch, and plaintiff's truck continued down the road a distance of 100 feet and turned over in a ditch on the other side of the road. The approximate weight of the parked truck was 3,500 pounds and of plaintiff's truck 2,500 pounds.

The only part of the parked truck that came in contact with plaintiff's truck was the left rear corner of the end gate. If the end gate had been closed, plaintiff's truck would have passed without a collision and the resulting damage.

When its driver left the truck parked partly on the side of the road, it was his duty to see that it was as far off the road and created as little obstruction in the road as possible. There was no necessity for the end gate to be open, and the very fact that it was open caused the truck to be more of an obstruction in the road than it would have been had the end gate been closed. It was negligence for defendant's driver to leave the end gate open and extending over the road. It was also negligence for the parked truck to be left unattended and without any lights displayed thereon after dark, and defendant is answerable in damages occasioned by the collision, unless it be shown that plaintiff's driver was guilty of contributory negligence such as to bar its recovery.

Plaintiff's driver was traveling at a rate of speed of 30 to 35 miles per hour just prior to meeting the car going north, and how much he reduced his speed is not shown. It is contended by defendant that he should have reduced his speed upon being blinded by the lights of the approaching car to such a speed as to have been able to stop immediately if faced with an emergency.

This court has adopted that principle of

law in the case of Woodley & Collins v. Schuster's Wholesale Grocery Co., 12 La. App. 467, 124 So. 559, affirmed by the Supreme Court in 170 La. 527, 128 So. 469. The same doctrine was announced in Pepper v. Walsworth, 6 La. App. 610; Ward v. Donahue, 8 L. App. 335; Locke v. Shreveport Laundries, Inc., 18 La. App. 169, 137 So. 645; Dominick v. Haynes Bros., 13 La. App. 434, 127 So. 31; Krousel v. Thieme et al., 13 La. App. 680, 128 So. 670; Raziano v. Trauth, 15 La. App. 650, 131 So. 212; Kern v. Knight et al., 13 La. App. 194, 127 So. 133, and Alston v. Cooley, 5 La. App. 623. And the Supreme Court of the state has announced a like doctrine in Southall v. Smith, 151 La. 967, 92 So. 402, 27 A. L. R. 1194, and Castile v. Richard, 157 La. 274, 102 So. 398, 37 A. L. R. 586.

We have also held that the automobile driver must keep a proper lookout ahead for obstructions in the highway, such as unlighted cars parked on the roadside, and cannot blindly drive along relying on the presumption that it is a violation of the law to leave an unlighted car parked on the roadside, and that no one will violate that law. Sexton v. Stiles, 15 La. App. 148, 130 So. 821 (writ refused by the Supreme Court).

It therefore follows that if plaintiff's driver, when blinded by the lights of the car he was meeting, failed to reduce the speed of his truck to such a speed as to be able to stop the truck when confronted with the obstruction he was prevented from seeing, due to the blinding lights, he was guilty of negligence such as would ordinarily bar recovery.

Plaintiff's driver admits he was blinded and could not see the truck or any other object ahead of him, yet he failed to reduce his speed to such a gait as to be able to stop after seeing the parked truck, a distance of at least 40 feet in front of him, or to be able to turn to the left and avoid the collision. Just what speed he was making during the time he was blinded is not shown, but the very fact that he testified that he stepped on the brake and put on the emergency immediately upon seeing the parked truck, and still knocked the heavier parked car 18 to 20 feet when he struck it and continued down the road 100 feet before turning over in a ditch, more nearly corroborates the view that he was not traveling slowly and was not exercising the precaution required of him, on becoming blinded when meeting a car, as is required by Act No. 296 of 1928, par. 5. The negligence of plaintiff's driver in this respect was a proximate cause of the accident and constituted contributory negligence such as to bar recovery.

Plaintiff relies on the case of Hanno v. Motor Freight Lines, Inc., decided by the First Circuit, Court of Appeal, and reported in 17 La. App. 62, 134 So. 317. The opinion of the majority of the court in that case is directly in conflict with the ruling of this court and the Supreme Court of the state in the case above cited. The dissenting opinion of Judge Elliott is more in conformity with what we consider the jurisprudence of this state, and a universal ruling, with few exceptions.

Plaintiff urges that the low visibility of the end gate should be taken into consideration and the theory urged is a correct one. But the evidence in this case does not fit his contentions. The driver of plaintiff's truck does not contend that he collided with the end gate because he could not see it at the time he saw the truck. To the contrary, his testimony shows that due to the blinding lights of the north-bound car he could not see any part of the

truck and as soon as the lights passed, he saw the truck a distance of 40 feet away, with the end gate extending to the center of the road. According to his testimony, he saw the end gate as soon as he saw the truck and as soon as he could see either, under the circumstances, and, if the speed of his truck had been reduced when he became blinded, as is required by law, he could have avoided the collision after seeing the truck.

The judgment of the lower court is erroneous and will have to be reversed. It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed and the demands of plaintiff rejected, at its cost.