## MANSUR v. ABRAHAM et al.*
## MEREY v. ABRAHAM et al.
### No. 1397.

Court of Appeal of Louisiana. First Circuit.
Jan. 21, 1935.

Taylor, Porter & Brooks, of Baton Rouge, for appellants.

Robert Ainsworth, Jr., and Sam Monk Zelden, both of New Orleans, for appellees.

MOUTON, Judge.

While driving an auto westward on the Baton Rouge Hammond highway, Joseph Abraham, the .driver, collided with a truck parked on the side of the roadway.

The other occupants of the car, besides Mr. Abraham, were Mr. Peter Mansur, Mrs. Thomas E. Merey, Mrs. Joseph Nolan, and Mrs. Essie Hannie.

Suit is brought by Mr. Peter Mansur and Mrs. Thomas E. Merey, in solido, against Joseph Abraham and the New Amsterdam Casualty Company, his insurer, for damages alleged to have resulted from the collision.

Mr. Mansur is asking damages for personal injuries in the sum of $5,100. The sum of $670 is demanded by Mrs. Merey for shock, loss of diamond ring, diamond bar pin, purse, dress, and hat, as damages caused by the accident.

Mr. Mansur obtained judgment for $2,000, and Mrs. Merey for $250, from which the defendants have appealed.

█ The defendants filed the plea of one year's prescription before answering which was overruled below.

We must dispose of this plea before passing on the merits.

As alleged in the two suits, the collision occurred on the 17th day of December, 1932, and from that date the year expired on December 17, 1933, which happened to be a Sunday.

The suits were filed on Monday, December 18, 1933, the day following. •

The contention.of the defendants is that. as the last day of the year from the date of the collision fell on Sunday, a dies non, plaintiffs' suits should have been filed on Saturday, the 16th of December, 1933, on the day next preceding the Sunday on which the year expired, as hereinabove stated.

In the case of Allen & Deblois. v. Their Creditors, 8 La. 221, it was contended that an opposition had not been filed within ten days, the time required by law.

In that case, the 10th day was Sunday, and the opposition was filed on Monday following, as were the suits in this case. ·The court stated in that case that as the 10th day, Sunday, happened not to be a judicial day, it was impossible to file the opposition on that day. "all judicial proceedings being forbidden." The court then concludes by saying: "If we should say that the opposition comes too late, we should deprive the opposing creditor of one day allowed by law, or compel him to do what is legally impossible."

The same rule was applied in Garland v. Holmes, 12 Rob. 421; In Succession of Tay-

---

*Rehearing granted March 25, 1935.

lor, 172 La. 1099, 136 So. 66; and in other decisions of the Supreme Court of this state; also in 62 Corpus Juris, p. 1000, § 49.

In this case, as the last day of the year fell on a Sunday, if that day were to be taken into account in the computation of time within which defendants claim these suits should have been filed, plaintiffs would be deprived of one day in the time allowed to file their complaint, unless, as was said, in Allen v. Their Creditors, 8 La. 223, we compelled them "to do what is legally impossible."

We think the reasoning of the court is sound as expressed in Allen v. Their Creditors, 8 La. 221, hereinabove cited, and in which the same doctrine was applied in the decisions above referred to, and in several other adjudications on this subject.

In Corpus Juris, 62, p. 1000, § 49, above cited, it is said: "When the last day of a period of time within which an act is to be done falls on Sunday, that day is excluded from the computation and the act may be rightfully done on the following secular or business day."

In connection with the principle thus stated in Corpus Juris, we find the following, quoting: "Another conservative principle which should affect the determination of the question is that the computation of time should be so made as to protect a right and prevent a forfeiture, if this can be done without violating a clear intention or a positive provision." 17 R. C. L. 754.

There could be no such violation in applying this doctrine under the laws of this state.

In article 1757, Civil Code, where reference is made to a civil obligation as being a legal tie giving to the party entitled thereto, the right of enforcing its performance, it is therein further said as follows: "When the action is barred by prescription, a natural obligation still subsists, although the civil obligation is extinguished." Article 1758.

It occurs to us that under this provision of our Code which says that a natural obligation still subsists after the prescriptible period has accrued that the rule in question herein should not be rigidly construed, but should rather receive a liberal interpretation so as to protect the rights of these claimants to have their demand passed upon by excluding from the computation of time Sunday, December 17, 1933, thus defeating the defense presented under the exception of prescription which, we find, was correctly overruled by the district judge.

Counsel for defendants frankly concede that the authorities are in conflict on this issue, and so do we find, but we think that we have reached a conclusion in consonance with the principle recognized in the jurisprudence of this state on this subject, and that therefore the plea of prescription was correctly overruled.

## Merits.

■ The collision with the truck occurred at about 7:30 p. m., December 17, 1932. The truck was parked on the side of the highway, and had no lights. It was then dark, as was testified to by the witnesses in the case. Joseph Abraham, driver of the auto in which plaintiffs were riding as guests, was going at about 25 to 30 miles an hour.

Mr. Mansur, plaintiff, was sitting on the front seat with Mr. Abraham, Mrs. Merey, the other plaintiff, was sitting in the rear of the auto with Mrs. Nolan and Mrs. Hannie. They all say the on-coming car had bright lights and that they were blinded by these lights.

Mr. Abraham did not testify, although he was present in court, as appears from the record.

The testimony of Mr. Mansur and Mrs. Merey is that upon meeting the other car Mr. Abraham suddenly turned to his right, and without reducing his speed ran his auto into the truck.

Counsel for plaintiffs rely largely on the cases of Sexton v. Stiles, 15 La. App. 148, 130 So. 821, and Safety Tire Service v. Murov, 19 La. App. 663, 140 So. 879, where the court said that automobile drivers must keep proper lookout ahead for obstructions in highway, such as unlighted cars parked on the highway; and, on being blinded by lights of approaching car, must reduce speed so that they may be able to stop immediately if faced with emergency. Also in the case of F. Strauss & Son v. Childers (La. App.) 147 So. 536, 538, where the court said: "A motorist has not the right to assume that his course of travel is free of danger or obstruction, in the absence of his ability to see clearly ahead."

In the case of Hanno v. Motor Freight Lines, Inc., 17 La. App. page 63, 134 So. 317, 319, plaintiff, while traveling on the Baton Rouge-Hammond road in order to avoid an on-coming car, pulled to his right, and in doing so ran into a parked truck on the side of the highway which had no lights or signals.

In that case this court said: "Looking for what was the proximate cause of the accident, as we must in order to fix liability, we

certainly believe that it was the absence of lights or of any warning whatever of the presence of this large truck at night on the public highway. The state statute, No. 296 of 1928, § 57, required that the one in charge of that truck display on it 'one or more lamps projecting a white light visible under normal atmospheric conditions from a distance of five hundred feet to the front,' and also a red light 'visible under like conditions from a distance of five hundred feet to the rear.' This is not a rigid regulation, and it is a very precautionary one. Had it been complied with in this case, there is little reason to believe that this accident would have occurred."

We concluded in that case that the negligence of the driver of defendant's truck was the real and proximate cause of the accident and therefore held his employer liable in damages.

In the case of Holcomb v. Perry (Second Circuit) 19 La. App. page 11, 138 So. 692, 696, the court quoted approvingly from the opinion of this court in the case of Hanno, above referred to, in which were involved practically identical issues; and said: "So in the present case we hold that the proximate cause of the accident was the parking of the truck of the defendant in the nighttime in such a manner as to practically block the entire highway, and the absence of lights or any warning whatever on the truck."

In the Hanno Case we held that, when a person is blinded by the lights of a car coming from an opposite direction, he should exercise great caution, have his car under such control as to safely meet any ordinary emergency. The emergency in that case, we found, however, was not an ordinary one a driver might expect to meet on the highway, as the law prohibits the leaving unguarded, and without lights, trucks parked on highways after dark.

After rendering the decision in Holcomb v. Perry, the Court of Appeal, Second Circuit, in Safety Tire Service, Inc., v. Murov, 19 La. App. 665, 140 So. 879, 881, held that motorist must keep proper lookout ahead for obstructions in highway, such as unlighted parked trucks, and, when blinded by lights of approaching car, must reduce speed so that he is able to stop immediately if faced with emergency, and nothing is said in that opinion about the decision rendered in the case of Holcomb v. Perry, wherein it appears to us the court had taken a different position in approving the decision of this court in Hanno

v. Motor Freight Lines, Inc., 17 La. App. 63, 134 So. 317.

In the course of its opinion in the later case of Safety Tire Service v. Murov, the court said in a prior opinion, Sexton v. Stiles, 15 La. App. 148, 130 So. 821, it had held that a motorist must keep a proper lookout ahead for obstructions in the highway, such as unlighted cars on the roadside, and cannot blindly drive along relying on the presumption that it is a violation of the law to leave an unlighted car parked on the roadside and that no one will violate the law; and, in reference to the quotation from the 15 La. App., says: "Writ refused by the Supreme Court."

In the Hanno Case decided by this court, we did not say that the driver of an auto could blindly drive along relying on the assumption that the road was clear of all obstructions. We held that the motorist, under such circumstances, should drive with caution, but could not be held to expect that the highway was obstructed by an unguarded truck, without lights, or any other signal of danger. In the Hanno Case decided by this court writ of review was also refused by the Supreme Court. See 17 La. App. p. 62, 134 So. 317.

In the case of Woodley & Collins v. Schusters' Wholesale Produce Co., Inc., 170 La. 527, 128 So. 469, the Supreme Court held that, as a general rule, a motorist traveling at 30 miles an hour, when blinded by the headlights of an approaching car, is guilty of negligence if he fails to slow down to a speed at which he can stop instantly. In that case, the charge of negligence, as stated in the syllabus, was that the truck had no tail-light contrary to Act No. 232 of 1926, § 5; that section of Act No. 232 of 1926 required a tail-light or a parking light mounted on the left rear fender of a truck or bus, but there was no provision in reference to the projecting power of such light.

Later, in section 57, Act No. 296 of 1928, in providing for such a light on vehicles or trucks parked or stopped upon a highway, it is required that there must be "one or more lamps projecting a white light visible under normal atmospheric conditions from a distance of five hunded feet to the front of such vehicle and projecting a red light visible under like conditions from a distance of five hundred feet to the rear."

In this case the proof is that the Abraham car ran into the rear end of the truck which had no light. There is nothing in the evidence to show that the atmospheric conditions were not normal at the time of this col-

lision. As such was the situation, if a red light, of the character required by Act No. 296 of 1928, had been placed in the rear of that truck, it would have been visible at a distance of 500 feet. It is not to be believed that the headlights from the on-coming automobile could have blinded Mr. Abraham at a distance further than 500 feet, so that his vision would have been so disturbed or blurred that he could not have seen the red light in the rear of that truck before the approaching car had passed beyond the point where the truck was standing.

We must therefore conclude that he could not have failed to see this red light had the owner or driver of the truck complied with the law. We say so, particularly as he was going at the time at a speed of 25 or 30 miles an hour, and which he kept up on swerving to his right to let the other car pass to his left.

If lights white and red were placed in the front and rear of trucks or other vehicles, as required by Act No. 296 of 1928, it seems to us that collisions on the highways of the character under discussion would never occur. These accidents, if such lights were displayed, might happen only in cases where they would be the result of reckless driving.

There was no fast or reckless driving in this case, as it is shown that Mr. Abraham was going at 25 or 30 miles an hour when he ran into the truck. Mr. Abraham was not guilty of negligence, as held below, and the judgments rendered against him and the New Amsterdam Casualty Company, his insurer, in favor of Mrs. Thomas E. Merey and in favor of Mr. Peter Mansur, as his guests, must be reversed.

In this case a reversal will be entered against Mrs. Thomas E. Merey; and, in a separate decree, judgment of reversal will be entered against Mr. Peter Mansur.

It is therefore ordered, adjudged and decreed that the judgment below rendered in favor of Mrs. Thomas E. Merey against Joseph Abraham and the Amsterdam Casualty Company be annulled, avoided, and reversed; that her demand be rejected at her cost in both courts.

LE BLANC, Judge.

I respectfully dissent from the ruling of the majority of the court on the plea of prescription presented on behalf of the defendants in these cases.

The articles of the Civil Code which govern and have to be considered on this plea are articles 3536, 3537, 3467, and 3469.

The first of these articles fixes the period of prescription:

"The following actions are also prescribed by one year:

"That for injurious words * * * and that for damages * * * resulting from offenses or quasi offenses. * * *"

The second mentioned article fixes the starting date of the period of prescription in the following language:

"The prescription mentioned in the preceding article runs:

"With respect to the merchandise injured or not delivered, from the day of the arrival of the vessel. * * *

"And in the other cases from that on which the injurious words, disturbance or damage were sustained."

It is thus established, therefore, that the period of prescription in these cases is *one year*, commencing from the *day* on which *the damage was sustained*. (Italics mine.)

According to the allegations of the petition in each case, the automobile accident and the resulting damages sustained took place on December 17, 1932. The date, December 17 of the following year, happened to fall on a Sunday, and the plaintiffs, claiming that date fixed the end of the period in which they had to file their suits, and that it was a dies non, took the next day, that is, Monday, December 18, 1933, as the final date, and did on that day file their suits, which they contend were filed in time.

The next article of the Civil Code mentioned as bearing on the subject, article 3467, provides that: "The time required for prescription is reckoned by days, and not by hours; it is only acquired after the last day allowed by law has elapsed."

Then article 3469 provides that: "In such prescriptions as are acquired in one or more years, the time is reckoned according to the years of the calendar which have elapsed during the time of possession."

It is thus seen that by the terms of article 3467 the last day of the prescriptive period must have entirely expired. In other words, the party claiming the prescription cannot claim it by a certain number of hours or moments. Some of the French commentators, in their discussions on this point, use the expression taken from the Roman law, "a momento ad momentum." See Pothier, vol. 4, p. 616; Duranton, vol. 21, p. 557. These authors point out the difference in the computation of the period as far as the time of expiration is concerned between the prescrip-

tion acquirendi causi and the prescription liberandi causi. Pothier distinctly states that as to the prescription established against a personal action of a creditor against his debtor it is accomplished after the last day has entirely expired, which seems to be in accord with article 3467 of our Code, by the provisions of which, of course, we are governed. In Rady v. Fire Insurance Patrol of New Orleans, 126 La. 273, 52 So. 491, 139 Am. St. Rep. 511, the Supreme Court distinctly held that the day a quo is to be excluded in computing the prescriptive period of one year in an action for damages, citing article 3467 of the Civil Code. · The court also cited as authority the case of De Armas v. De Armas, 3 La. Ann. 528. Referring to this latter case, it is noted that the prescriptive period involved was not that of one year, but one of forty days fixed by special statute. In speaking of the days ad quem and a quo, the court says that the former is included, but that the article of the Code is silent as regards the latter. The court then resorts to French authorities to support its holding that the day a quo is not included in the computation. It must be borne in mind, as just stated, that the prescription claimed in that case was one of a short period, and that the action was not one for damages, as that in this case, which is prescribed *by one year which begins to run from the day on which the damage was sustained.* (Italics mine.) There are numbers of cases from other jurisdictions as well as from this state in which, in construing the expression "reckoned by" or "reckoned from," the courts have held that the time must be computed from the day after that on which the event which gives rise to the action happened. As an example of such a case in this State, reference may be made to McWilliams v. Comeaux, 135 La. 210, 65 So. 112. But why the expression "reckoned by" as used in article 3467 of the Civil Code should be resorted to in order to hold that the action for damages which is prescribed by *one year*, commencing to run *from the day* on which the damage was sustained, really means that prescription runs only *from the day after* that on which the damage was sustained, I am unable to understand. (Italics mine.) Reckoning from the one day or the other in this case would make a difference so marked as to eliminate the real question on which the plea is based. In other words, if the day on which the damage was sustained, December 17, 1932, is taken as the starting point, the last day plaintiffs had would then have been Saturday, December 16, 1933, and the court would not be called on to say what effect, the

last day being otherwise, a Sunday, would have in the matter. Of course, if what is referred to here as the holding of the Supreme Court with regard to the exclusion of the day on which the damage was sustained is what is really meant, it must be conceded that this court, as one of inferior jurisdiction, is bound to follow that ruling, and I will now proceed to a consideration of the real issue that is presented.

It is to be observed that under article 3469 of the Civil Code, in prescriptions that are acquired in one year, such as that with which we are here concerned, the time must be reckoned according to a calendar year. A calendar year, of course, consists of 365 days, except in case of a leap year, which is 366 days. The year 1933 with which we are particularly concerned in this case was not a leap year, and naturally we do not have to take that matter into account.

Now, computing 365 days from, and including December 18, 1932, which was the day after that on which the accident complained of happened, and that on which, according to the decisions, prescription began to run, we get to midnight of December 17, 1933, the day on which it had been acquired and the action barred. If, therefore, these plaintiffs are given the whole of the following day, December 18, 1933, they will have had 366 days, which is one day more than the calendar year. Of course, it could be argued on the other side that, had plaintiffs been compelled to file their suits on Saturday, December 16, 1933, the 17th, being a dies non, they would have had but 364 days, or one day less than a calendar year. We can readily see the circle into which such argument would lead us and how it would serve but little purpose in a solution of the question. The majority opinion seems to be based principally on the ground that the law does not favor the forfeiture of a right, with which I agree as a general proposition, but I contend that, where a party has been given a whole year by the law to exercise the right he claims, he has already received a favor, and that, if he neglects to protect it and meets a situation such as is presented in this case, he has no one to blame but himself. Pothier, who has already been cited, in explaining some of the differences in computing the time of prescription by which property is acquired and that by which a person is liberated from debt, makes this significant commentary: "La raison de différence est, que dans la prescription contre les actions personelles, la loi a pour object de punir la negligence du creancier ; elle lui prescript un

certain temp dans lequel elle veut qu'il entente son action: passe lequel, elle veut qu'il n'y soit plus recu."

I attempt the following translation: "The reason for this difference is, that as regards the prescription against personal actions, the object of the law is to punish the negligence of the creditor: it prescribes a certain time within which it wants him to institute his action: past which, it no longer wishes it to be received."

I maintain that a person who awaits 364 days in which to institute a suit for damages and then, finding that the three hundred and sixty-fifth day, which is his last day in which to do so, is a Sunday, and because of that claims the whole of another day more than the calendar year, has been guilty of negligence by his inaction, and, as Pothier states, the purpose of the law is to punish him by prescribing that his suit can no longer be entertained.

I concede that there is a vast conflict of authority in the decisions cited by counsel on both sides in these suits, but that conflict seems to have arisen in cases in which the period of limitation had reference to the performance of some act prescribed by special statute or to matters of practice. In such cases, the period is generally one of days; short periods in which only one or two Sundays may have intervened, and they are usually excluded in the computation of the time allowed. In some instances, the last day is expressly excluded by the terms of the statute itself. As examples of such statutes in this state, I may refer to article 575 of the Code of Practice, as amended by various acts of the Legislature, which regulates the matter of appeals, and in which Sundays are excluded, and also article 318 of the same Code, which specially provides for the exclusion of the day on which service of notice is made and the day on which an act is to be done, in all cases where the delay is given to do something or to answer.

The point I make is expressed better than I can state it in 62 C. J. p. 1000, under the topic "Time," at section 49, which has special reference to the performance of acts when the last day given to perform them falls on Sunday:

"As Sunday is dies non juridicus in regard to judicial and official acts and proceedings, and as the performance of common labor as well as the transaction of ordinary business on that day is generally prohibited by statute, it is a general ru'e, made so by statute in many jurisdictions, that, except where the act in question may be lawfully done on Sundays, when the last day of a period of time within which an act is to be done falls on Sunday, that day is excluded from the computation, and the act may be rightfully done on the following secular or business day; * * * or in case of an act to be done by a Court, it may be done on the next succeeding day, after Sunday, on which the Court can perform the duty imposed on it. This rule is generally applied alike to the construction of statutes and to matters of practice, or to any act allowed or required by law, or by rule or order of Court, except where it is specifically otherwise provided. *The rule applies, however, only where there is some act to be performed on the last day, which is Sunday, and hence it does not apply where Sunday is the last day of a period which is fully elapsed before the act is to be done."* (Italics mine.)

Other expressions bearing directly on the point involved are to be found in a decision from the state of Kentucky, Geneva Cooperage Co. v. Brown, 124 Ky. 16, 98 S. W. 279, 124 Am. St. Rep. 388. Because of the striking similarity of that case with the one presently before us, I take the liberty of quoting rather copiously from the decision:

"In the construction of this statute, the word 'year' means a calendar year. Ky. St. 1903, § 452. And a calendar year is ordinarily and in common acceptation considered to be 365 days. But if the calendar year is computed from a given day in a month, say September 19, 1903, and the time within which the action must be brought expires in one year, it would expire on the next day before the 19th of September of the following year namely, on the 18th of September. And it happens that in thus computing the time in this particular case, and counting from September 19, 1903, to September 18, 1904, inclusive, the appellee had 366 days in which to institute this action. Ordinarily there would be included in this period 365 days, but as 1904 was a leap year, one day was added. So that, giving the statute the most favorable construction, and extending the meaning of 'calendar year' to its extreme limit, the action is yet barred. * * *

"Nor can there be any question that, under the rule of construction adopted by this court, the day on which the injury occurred must be included. * * *

"It is said, however, that the 18th of September, 1904, fell on Sunday, and as the action could not have been instituted upon that day, the person entitled to bring the suit

should be allowed the whole of the next day in which to institute his action; and in support of this proposition our attention is called to Owen v. Howard Ins. Co., 87 Ky. 571, 10 S. W. 119, which was a suit upon an insurance policy providing that no action upon it could be maintained unless commenced within 12 months next after the fire occurred, and, as the last day of the year was Sunday, it was held that the action might be instituted on the following day, the court resting its conclusion upon the ground that, as the statute of limitation relied on was the result of a contract, it should be fairly and equitably construed to effect the intention of the parties, and relieve the contract of an interpretation that would defeat its enforcement. And this seems to be the view generally · taken in the construction of limitation clauses in contracts, although intervening Sundays will be counted. It is only when the day of performance falls on Sunday that it will be excluded and the next day allowed. Salter v. Burt, 20 Wend. (N. Y.) 205, 32 Am. Dec. 530; Avery v. Stewart, 2 Conn. 69, 7 Am. Dec. 240; State v. Michel, 52 La. Ann. 736, 27 So. 565, 49 L. R. A. 218, 78 Am. St. Rep. 364. *But this rule has never been extended to embrace statutory provisions limiting the time in which an action must be brought. Indeed, there seems to be no good reason why the court should take the liberty of extending the period of limitation fixed by the legislative department, when the time fixed is sufficient to give all persons interested ample opportunity to protect their rights by instituting an action* [italics mine]; although it seems to be generally accepted that, when the period of time within which an act must be done is less than a week, an intervening Sunday will be excluded; if more than a week, the Sunday will be included. Am. & Eng. Ency. of Law, vol. 26, p. 10; State v. Michel, 52 La. Ann. 936, 27 So. 565, 49 L. R. A. 218, 78 Am. St. Rep. 364. * * *

"Our attention has been directed to section 454 of the Statutes of 1903, providing that 'if any proceeding is directed by law to take place, or any act is directed to be done, on a particular day of a month, if that day happen to be Sunday, the proceeding shall take place or act shall be done on the next day.' This section is found in the chapter on the construction of statutes, but its meaning cannot be extended to embrace provisions in the statute of limitations. By its terms, it is confined to a proceeding directed by law to take place, or an act directed to be done, which must be construed to mean in the course of judicial proceedings.

"After a full investigation of the authorities, and a careful consideration of the question, we cannot escape the conclusion that an action under this statute must be brought within a year, and, if the last day of the year happens to fall on Sunday, the time in which it may be brought cannot be extended to the following day."

Such seems to me to be the logical view to take rather than resting the matter on the broad principle of avoiding the forfeiture of a right. The right in this instance is one which the parties have enjoyed for a whole year, and if, having a just and honest claim against these defendants, they have waited until the expiration of that period and find themselves confronted with the situation in which their laches have placed them, they should, as Pothier says, be punished for their negligence in having failed to exercise that right in time.

For the reasons stated, I favored sustaining the pleas of prescription and of dismissing the suits on that ground. The majority of the court having decided otherwise, it became necessary for me to consider the cases on their merits, and, after doing so, I agreed with the reasons rendered by Judge MOUTON and concur in the decree contained in the opinion handed down by him.

### ELLIOTT, Judge.

My dissent is only from that part of the opinion and decree which holds that Joseph Abraham, defendant, was not negligent and at fault for not stopping as soon as he was blinded, and, if not necessary to come to a full stop, for not slowing down to such speed that under the light afforded by the headlights of his own automobile the unlighted truck stopped in the highway ahead of him could have been seen in time to have avoided striking it. And I think his guest, Peter Mansur, riding on the front seat with him, was also negligent and at fault for not warning Abraham as soon as he was blinded, upon seeing that he did not stop or slow down, to do so, until the situation in the road ahead could be seen and steps proper to safety could be taken.

It is my understanding that the preponderance of judicial opinion in this state so requires, when the driver of a motor vehicle is for any cause blinded and cannot see, objects in his way ahead so as to admit proceeding with safety. It is my understanding that the rule is specially applicable when driving at night on a highway like the one on which this accident occurred, subject to frequent use, that motor vehicles and other things stopped in the road without lights and unable

to move out of the way may be avoided. I think prudence in driving requires that it be done. I think stopping when actually blinded, and if not totally blinded, a slowing down to such speed that one can stop within the distance the headlights of his own automobile illuminate the way, is the contemplation of Act No. 296 of 1928, § 52, which says: "Will at all times mentioned in Section 50 and under normal atmospheric conditions and on a level road produce a driving light sufficient to render clearly discernible a person two hundred feet ahead. * * *" There are other pertinent legal provisions on the subject, but the one quoted is sufficient for present purposes.

As for the lady guests who occupied the rear seat, I think they should recover. Churchill v. Texas & P. R. Co., 151 La. 726, 92 So. 314; Delaune v. Breaux, 174 La. 43, 139 So. 753.

There have been situations in which it has been held that it was not negligent for one driving on a frequently used highway at night to be unable to stop in time to prevent striking an object encountered unexpectedly. Penton v. Fisher (La. App.) 155 So. 35, is, in my opinion, such a case. In that case the opinion says, on page 39 of 155 So.: "The Entrevia truck was being driven at about 15 or 20 miles an hour; that you could not see more than 15 or 20 feet ahead; that, as their truck came down a hill and started across the level space at the foot of the hill, they saw the Fisher automobile 15 or 20 feet ahead in an angling position across the road on the side of the road on which they were driving."

The provision in section 52 did not control in the Penton Case, because the opinion shows that the road was not level; the truck having descended one hill and faced the ascent of another. Two decisions of the Supreme Court are cited in the opinion as supporting the right of the plaintiff to recover under the facts of that case.

In the case Hanno v. Motor Freight Lines, Inc., 17 La. App. 63, 134 So. 317, the governing facts were similar to the facts in the case now before the court. In that case as well as in the present the road was level. I did not agree with the majority of the court in the

Hanno Case, and explained why in a dissenting opinion.

In Thompson v. Bourgeois (La. App.) 146 So. 708, the plaintiff Thompson was driving on a frequented highway at night in a rain storm, in which the darkness was occasionally lit up momentarily by lightning. The automobile of the defendant Bourgeois was stopped in the road without lights, due to an accident. The road was level. In the Thompson Case it seemed to me that Thompson should have stopped, or moved forward in the darkness at such speed under the headlights of his own automobile that he would have stopped in time to have avoided running into things ahead of him in the road. I so stated in a dissenting opinion, and cited decisions of the Supreme Court and Courts of Appeal which seemed to support my position.

In Holcomb v. Perry, 19 La. App. 11, 138 So. 692. The Court of Appeal, Second Circuit, cited with approval the opinion in the Hanno Case, but in a subsequent case, Safety Tire Service v. Murov, 19 La. App. 663, 140 So. 879, the same court held that the opinion in the case mentioned was not in harmony with the jurisprudence of the state on the subject, but did not refer to their recent decision in Holcomb v. Perry.

In a late case, O'Rourke v. McConaughey (La. App.) 157 So. 598, the New Orleans Court of Appeal held that the opinion in the Hanno Case was not in harmony with our jurisprudence on the subject. The Supreme Court refused to issue a writ of review in the Hanno Case, but did likewise in Safety Tire Service v. Murov, although the two opinions cannot be both correct in the matter of our jurisprudence on the subject.

The conflicting decisions of the Courts of Appeal cause uncertainty as to how cases should be decided in situations of that kind.

A decision of the Supreme Court, indicating as near as can be done the line of conduct which the driver of a motor vehicle should observe when driving on a frequented highway at night, when for any cause the driver becomes unable to see his way ahead on a level road, will, I think, be of substantial service.