ELLIS, Judge.
Willie Towles instituted this suit against Voladie Jones contending that certain injuries he received on January 19, 1956 were incurred when his leg was run over by a truck operated by Mr. Jones. Judgment was sought in the amount of $16,654. The trial court, satisfied that plaintiff had not sustained his burden of proof, granted judgment for the defendant. Plaintiff has appealed from this judgment.
The record reveals the following facts:
The defendant, Voladie Jones, was driving north in a stake body truck along the blacktopped River Road in Ascension Parish, north of Sunshine, Louisiana, at a speed of twenty-five to thirty miles per hour, shortly after dark on January 19, 1956. He was going coon hunting with two young men, Theodore LeBlanc and V. W. Brown, who were in the truck with him, and with a third man, Joe LeBlanc, who was driving his own car some 200 yards behind the Jones’ truck. As Jones approached a curve in the road, he saw a car coming around the curve in the opposite direction. He took his foot off the accelerator and dimmed his lights. The other car rounded the curve and, for a moment, Jones’ vision was impaired by the *265 lights of the approaching car. When he was parallel to the car, he noticed a form in the road. At first he thought it was a dog. As soon as the other lane was clear, he swerved to miss the form. Simultaneously, one of the companions realized it was a man and shouted a warning. Jones veered as sharply as he could around the prone figure, which was the plaintiff, Willie Towles. The plaintiff was stretched out across the lane in which Jones was travelling. Towles had on a dark overcoat and his feet were near the center line. After passing the figure, the defendant pulled quickly back into his lane and stopped his truck to prevent Joe LeBlanc from inadvertently running over the plaintiff. As a result of Jones’ actions, Joe LeBlanc pulled over into the opposite lane and then stopped alongside plaintiff. Then plaintiff was lifted into LeBlanc’s car and taken to his home. A local doctor was called and some three hours later plaintiff was transferred to Lady of the Lake Hospital and treated by a specialist. Plaintiff’s left leg was injured at the ankle and knee joints. There was also some injury to the skin and calf of the leg. He had residual ten per cent disability in his left leg after recovery, which was superimposed upon a preexisting disability. Plaintiff was 72 years old at the time of the accident and his left leg muscles had already atrophied from disuse and poor circulation due to a stroke which he had suffered some time prior to the accident. He had been using a cane since he suffered the stroke.
There is some testimony in the record to the effect that plaintiff was under the influence of alcohol on the night of the accident. There is also testimony in the record to the effect that at the time the specialist treated him, some three hours after the accident, there were no apparent signs of intoxication, although no special tests were run to determine the percentage of alcohol in plaintiff’s bloodstream at the time. All of the positive testimony of the disinterested eyewitnesses corroborated the defendant’s testimony to the effect that plaintiff was lying in the road at the time defendant first saw him.
The plaintiff testified that he was walking in the road at the time he was struck and that the vehicle which hit him “just kept a running and kept a running.” This testimony is strengthened by the bone specialist who testified that from examination of the injury which was inflicted he was positive that plaintiff was struck while in a standing position.
This testimony of the plaintiff and the specialist, and defendant’s testimony to the effect that he never did feel a bump when he veered around the plaintiff and did not know whether or not he had hit plaintiff was given great weight by the trial judge. Despite the fact that there was other testimony in the record which would indicate that defendant and his companions thought defendant’s truck had struck the prone plaintiff, the trial court was satisfied that defendant’s truck had never struck plaintiff. The trial judge seemed to think that plaintiff was the victim of a hit and run driver and that plaintiff was found and aided by defendant and his companions.
On appeal, counsel for plaintiff strongly urges several bases on which this holding was in error. Suffice it to say, this court will consider, for the sake of the argument, that defendant did drive his truck so that it struck plaintiff. This court must decide on this appeal whether or not this constituted negligence, under the circumstances. It appears from the record that defendant was keeping a proper lookout. He was travelling at a slow rate of speed towards a curve. He slowed even more when he realized another vehicle was approaching and dimmed his lights. Plaintiff, for some unexplained reason, was lying across defendant’s lane of travel wearing a dark overcoat. He was, in effect, camouflaged on the blacktopped highway and his figure was not discernible until closely approached. The coincidence of the other car’s passing at the time defendant drove close to plaintiff also con *266 tributed to the accident. The lights temporarily impaired defendant’s vision, even though he slacked his speed. As soon as these lights no longer affected defendant, he noticed something in the road. He noticed the form at the same time as his youthful companions did. As soon as the other lane was free, defendant veered sharply to avoid missing the form. He then drove back into his lane and slammed on his brakes to prevent LeBlanc from driving over the plaintiff.
This court feels that the defendant in this case had no opportunity to avoid the accident as contended by plaintiff’s counsel. Defendant apparently did everything he could to avoid an accident when faced with a sudden emergency.
Plaintiff’s counsel contends that the doctrine of last clear chance is inapplicable in this case because the plaintiff was not shown to be guilty of any contributory negligence. Under the circumstances plaintiff’s negligence is not in question and this court will accept this contention as true.
The following quotations are taken from plaintiff’s brief:
“R.S. 32:301 provides that the headlamps of motor vehicles shall be so constructed and adjusted that they will at all times under normal atmospheric conditions and on a level road produce a driving light sufficient to render clearly discernible a person two hundred (200) feet ahead.
“R.S. 32:304 provides that if a motor vehicle meets another motor vehicle on the highway it shall dim the beams of its headlights subject to the requirement that the dimmed headlights shall give sufficient illumination under normal atmospheric conditions and on a level road to render clearly discernible a person seventy-five (75) feet ahead.
“In applying this provision of the statute, the courts have concluded that a motorist is held to have seen an object, which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it, and that the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he could stop within the range of his vision.” Monteleone v. Dularge Packing Co., La.App., 73 So.2d 335, 337.
It is true that this portion of plaintiff’s brief sets forth a recognized general rule of law, but this general rule of law is varied in certain cases, and the courts have recognized exceptions to this general rule by carefully examining the particular circumstances surrounding the fact situations in individual cases. The defendant’s counsel, in his brief, has cited the case of Kirk v. United Gas Public Service Company, 185 La. 580, 170 So. 1, as authority for finding defendant free of any negligence whatsoever in the instant case. This court finds that the Kirk case presents a strikingly similar fact situation to the one presented in the case at bar. In that case the plaintiff sought to recover damages to his automobile which resulted from colliding with the body of a dead yearling which defendant had allegedly killed and left on the highway. Plaintiff’s demands were dismissed by the District Court and the Court of Appeal for the reason that plaintiff was found guilty of contributory negligence in not having seen the calf on the road. The Supreme Court, on review, held that the plaintiff was not contributorily negligent and in the course of its opinion said:
“The record shows that there were light and dark splotches caused by oil and repairs to the pavement at the place where the yearling was killed and left on the highway. The animal was small and of a very dark color; and, according to the plaintiff’s witnesses, almost impossible to see, because of its small size and dark color and because of the condition and color of the pavement and other existing physical conditions. The driver and the *267 other occupants of plaintiff’s car testified that although the road was being closely observed, the body of the dead yearling was not seen until a moment before it was struck, when it was too late to avoid the collision. * * * The rule that a motorist travelling on the public highways after dark or during a rainstorm, fog, or other abnormal conditions, which prevents him seeing ahead, except imperfectly, and for a short time and distance, must guard against striking objects in the road with which he may be suddenly confronted, constitutes an exception to the general rule that a motorist may assume that the road is safe for travel even at night. But that exception to the general rule is itself subject to the exception that a motorist travelling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which he had no reason to anticipate he would encounter on the highway. As stated by Blashfield, in the last paragraph on page 457 of volume 5: ‘An automobile driver is not required to anticipate an unusual obstruction on the public highway.’ * * * The evidence shows, as we have hereinabove stated, that there were splotches on the paved portion of the highway in the vicinity of and at the spot where the body of the dead yearling was negligently left by the driver of defendant’s automobile. The animal was dark in color and small in size. Those facts, taken together with the surrounding physical conditions, made it difficult, almost impossible, for the driver of plaintiff’s automobile to see the dead animal until it was too late to stop the car and avoid striking the body, which was not one of the usual obstructions a motorist is required to anticipate and avoid. In these circumstances, we think it would be unreasonable to hold that the driver of plaintiff’s automobile was negligent in failing to see the body of the dead yearling sooner than he did.”
It is evident that these facts are quite similar to the facts presented in the ir.-stant case, but this court feels that the facts herein presented are even stronger in favor of finding the defendant free of negligence than were the facts in the Kirk case. The defendant in this case was driving at a very reasonable rate of speed. He saw another car approaching his truck around a. curve and slacked his speed and dimmed his lights. As the other car rounded the curve, its lights suddenly and momentarily impaired defendant’s vision. When the defendant was close enough to see the form of plaintiff in a dark overcoat on the dark road, it was too late to do any more than turn quickly as he did to attempt to avoid striking plaintiff. These circumstances all combined to contribute to this accident and to make it unavoidable as far as the defendant was concerned.
The cases of Radial v. Balthazar, La.App., 32 So.2d 483, Nickens v. F. Strauss & Son, Inc., La.App., 28 So.2d 84, Tom Hicks Transfer Co. v. Ft. Worth Poultry & Egg Co., La.App., 41 So.2d 802, and Safety Tire Service, Inc., v. Murov, 19 La.App. 663, 140 So. 879, are cited in the plaintiff’s brief as authority for the proposition that the driver of an automobile must operate his vehicle with regard to the safety of those who may be in his road way and may not assume that the road ahead is open, and that if for any reason whatsoever he should be unable to see the road ahead, he should bring his vehicle under such control that it may be stopped if necessary in case of an emergency and, in-extreme cases, it is his duty to stop. These cases present fact situations which vary to a high degree from those presented in the case at bar. The rules evolved in those cases are general rules which must be altered in extreme cases. Exceptions to these rules have been found necessary in the Kirk case cited above and in the cases of Gaiennie v. Cooperative Produce Company, 196 La. 417, 199 So. 377, Vowell v. Manufacturers *268 Casualty Insurance Company, 229 La. 798, 86 So.2d 909, and Warnick v. Louisiana Highway Commission, La.App., 4 So.2d 607.
Plaintiff contends defendant should have expected to find him lying in the road because defendant knew that plaintiff was ill and infirm and that plaintiff “constituted a continuing threat to himself and motorist in that particular area.” This court feels that it would be inequitable to place such a burden upon the defendant and plaintiff’s counsel has cited no authority for such a holding.
For the reasons assigned above the judgment of the district court dismissing plaintiff’s demands is hereby affirmed.